189 N.J. Super. 561 (1983)
461 A.2d 184
ROBERT AYERS AND MAE AYERS ET ALS., PLAINTIFFS,
v.
TOWNSHIP OF JACKSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided April 5, 1983.
*564 Steven J. Phillips and Donald I. Marlin for plaintiffs (Kreindler & Kreindler, attorneys).
Robert V. Paschon and Steven T. Singer for defendant Township of Jackson (Paschon, Feurey & Kotzas, attorneys).
Guy H. Haskins for defendants Ernst, Ernst & Lissenden and John A. Ernst, III (Haskins, Robottom, Hack, Piro & O'Day, attorneys).
HAVEY, J.S.C.
Defendant Township of Jackson and its township engineer, defendant John A. Ernst, III, move for partial summary judgment against plaintiffs, dismissing various plaintiffs' claims for bodily injury in this action involving claims of groundwater pollution allegedly caused by the operation of a municipal landfill.
Plaintiffs are 325 residents of the Legler section of Jackson Township, Ocean County, who allege that toxic wastes leached through the municipal landfill owned and operated by defendant *565 township and contaminated plaintiffs' well water. The residents allege that this contamination caused them to suffer bodily injury, emotional distress, impairment of quality of life and enhancement of risk of cancer. They also claim that the contamination resulted in property damage and property value loss to their homes. They allege that exposure to known carcinogens ingested by them over a long period of time will require substantial medical surveillance in the future, and they assert that the contamination of their well water and its ingestion constitutes a violation of their civil rights and a taking of property without due process or just compensation, cognizable under the Civil Rights Act, 42 U.S.C.A. § 1983.
Plaintiffs' complaint is couched in negligence, trespass, nuisance, battery and strict liability in tort. They allege that in 1972 defendant township negligently selected the site in question as a municipal landfill, failed to make adequate test borings to determine soil conditions, and provided erroneous data to the Department of Environmental Protection in applying for a permit to operate the landfill. They allege that defendant Ernst, as township engineer, was responsible for the selection of the site and the application process, and was negligent in carrying out his duties. The complaint states that, commencing in 1972 when the township began operating the landfill, the township violated state standards and exceeded the conditions of its permit in accepting excess liquid waste and permitted dumping into trenches dug too deep. This resulted in ponding and the dumping of waste directly into the groundwater. Plaintiffs also assert that defendant township failed to properly maintain and supervise the landfill, resulting in the depositing of chemical wastes at the site. It is claimed that on various occasions from 1972 to 1978 defendant had actual knowledge of contamination of the groundwater beneath the landfill, but took no steps to abate the condition. Finally, it is claimed that in November 1978, after complaints by residents about changes in their drinking water and of foul odor emanating from the landfill, the State of New Jersey advised the residents to stop drinking their *566 well water. The State thereafter initiated an action in the Superior Court, Chancery Division, Ocean County, to compel closure of the landfill, which resulted in the installation of a public water supply for the Legler residents and a closure plan presently being implemented.
Defendants move for partial summary judgment dismissing plaintiffs' claims for emotional distress, enhanced risk, cost of medical surveillance in the future and any claim for civil rights violation under 42 U.S.C.A. § 1983. They argue that, from the pleadings and discovery, no genuine issue as to a material fact exists and that none of the claims are cognizable under either State or federal law. R. 4:46-1. The court will accept as true all of the allegations contained in plaintiffs' pleadings and discovery and the medical reports submitted, and will draw all reasonable inferences most favorable to plaintiffs. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75 (1954).

Enhanced Risk
Plaintiffs allege that they suffer from a present condition of enhanced risk of cancer as well as liver and kidney disease. Their experts will testify as to the presence of approximately three dozen chemicals in the groundwater, including benzene, acetone, chloroform and choloheizene. These substances are known carcinogens or cause liver and kidney injury. Experts will give a toxological profile of each chemical and will make an assessment of the exposure to these chemicals by various age groups, and will give opinions as to the risk enhancement to each of these age groups. Generally, they will testify that all individuals exposed to the well water contamination are at an increased risk of developing cancer and liver and kidney damage. Their risk will vary according to dose, duration and exposure and inherent susceptibility, with children and infants having the highest risk. The experts concede, however, that a quantitative measure of excess cancer, liver and kidney risk cannot be derived. Nowhere do the experts say that, to a degree of reasonable medical probability, any or all of the *567 plaintiffs will suffer from any of these diseases in the future. Plaintiffs argue, however, that medical testimony will establish that plaintiffs' chances of suffering from one of these diseases has been increased as a result of ingestion of these chemicals and that this enhanced risk is a presently existing condition which is a compensable injury.
In order to recover for the alleged negligence of another, plaintiff must plead and prove actual loss or damage. Prosser, Law of Torts, (4 ed. 1971), § 30 at 143. The damage or harm need not be immediate. A plaintiff may recover damages for the prospective consequence of a tortious injury if the "prospective consequence may, in reasonable probability, be expected to flow from the past harm...." Coll v. Sherry, 29 N.J. 166, 175 (1959). Conversely, no recovery can be allowed for possible future consequences of tortious conduct. Budden v. Goldstein, 43 N.J. Super. 340, 346 (App.Div. 1957). "Reasonable probability" has been held to require "... evidence in quality sufficient to generate a belief that the tendered hypothesis is in all human likelihood the fact." Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 139 (1958). Plaintiffs characterize the increase in the risk of suffering a disease as reasonably probable and, therefore, compensable. But that risk cannot be quantified nor do any of the plaintiffs' experts even attempt to advance an opinion that any of the 325 plaintiffs have or will probably contract any of the diseases. The trier of fact is left to speculate as to the possible consequences of ingestion of the alleged carcinogens and other chemicals to the future health of each plaintiff. Plaintiffs rely upon Schwegel v. Goldberg, 209 Pa.Super. 280, 228 A.2d 405 (Super.Ct. 1967), where enhanced risk of epilepsy was held to be compensable, as well as Lindsay v. Appleby, 91 Ill. App.3d 705, 46 Ill.Dec. 832, 836, 414 N.E.2d 885, 891 (App.Ct. 1980), where the court held that an "increase in the risk of injury traceable to the conduct of a defendant is compensable...." Both cases involved severe head injuries with possible epilepsy or seizures in the future. The court in Schwegel allowed a claim for a 5% future chance of seizure. *568 Plaintiffs' claims for enhancement in the risk of contracting cancer is not caused by a severe trauma or bodily injury, nor can a percentage increase be established. No case can be found in our State that would allow a plaintiff to recover for such speculative future consequences of a tortious act.
To permit recovery for possible risk of injury or sickness raises the spectre of potential claims arising out of tortious conduct increasing in boundless proportion. Without minimizing plaintiffs' claim, the court cannot ignore the fact that much of what we do and make part of our daily diet exposes us to potential, albeit remote, harm. As long as the risk exposure remains within the realm of speculation, it cannot be the basis of a claim of injury against the creator of that harm.
To hold that enhancement of risk is not actionable does not leave plaintiffs without a remedy, if in the future any plaintiff suffers from a physical condition which can medically be attributed to ingestion of the alleged contaminants. Our "discovery" rule provides that the statute of limitations applicable to a personal injury claim will not begin to run until a plaintiff becomes aware that he has sustained injury or until he becomes aware that his damage was caused by the fault of another. Lopez v. Swyer, 62 N.J. 267 (1973); Lynch v. Rubacky, 85 N.J. 65 (1982). If and when a plaintiff manifests a physical condition which could be medically attributed to the ingestion of the alleged contaminants, his cause of action will have survived the statute of limitations, N.J.S.A. 2A:14-2.

Cancerphobia
Plaintiffs seek to recover for the emotional distress suffered by them as a result of being exposed to cancer-causing chemicals in their water. Scientific reports are submitted by plaintiffs to support claims ranging from mild depression to severe conditions of psychosis, all arising out of fear of cancer. Many families have reported stress, outbursts of rage and hostility, loss of sleep, and a variety of other mental and emotional *569 disturbances that the experts attribute to the contamination of the well water. Plaintiffs argue that such emotional distress is compensable without a showing of physical injury. Alternatively, they argue that the ingestion of the contaminants caused sufficient clinical insult to their bodies so as to support a claim for emotional distress associated with that injury.
Historically, if an actor's negligence created an unreasonable risk of either bodily harm or emotional disturbance to another, and it resulted in emotional disturbance alone, without bodily injury, the emotional disturbance was not a basis for a damage claim. 2 Restatement, Torts 2d, § 436A at 461 (1965). That rule was adopted in Ward v. West Jersey & Seashore R. Co., 65 N.J.L. 383 (Sup.Ct. 1900), which held that actual physical impact was necessary to sustain an action for negligent infliction of emotional distress. The rationale expressed in Ward, which required physical impact, was abandoned in Falzone v. Busch, 45 N.J. 559 (1965). The court in Falzone said:
We hold, therefore, that where negligence causes fright from a reasonable fear of immediate personal injury, which fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover if such bodily injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical injury rather than fright. Of course, where fright does not cause substantial bodily injury or sickness, it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability. [at 569; emphasis supplied]
Significantly, the court required a showing of substantial bodily injury or sickness caused by the fright.
Later, in Berman v. Allan, 80 N.J. 421 (1979), a case involving a doctor who failed to inform prospective parents of the availability of the amniocentesis procedure, the court held that mental and emotional anguish the parents suffered because their child was born afflicted with Down's Syndrome was compensable. The court noted that "courts have come to recognize that mental and emotional distress is just as `real' as physical pain, and that its valuation is no more difficult." Id. at 433. It is unclear in Berman how severe the parents' mental anguish was, or whether they manifested resulting bodily injury or illness. And in *570 Portee v. Jaffee, 84 N.J. 88 (1980), a mother who watched her seven-year old son suffer and die when he became trapped in an elevator was held to have a cognizable claim for the negligent infliction of emotional injury. Such a claim, however, required proof of four specific elements, including proof of severe emotional distress.
Since Falzone our courts have not emphasized the need to show that fright be from a reasonable fear of immediate personal injury. Rather, the inquiry is whether the defendant owed a duty to the one who experienced the fright. Was it reasonably foreseeable that fright or shock would be experienced by one exposed to the tortious conduct of the defendant? Caputzal v. The Lindsay Co., 48 N.J. 69 (1966); Di Cosala v. Kay, 91 N.J. 159, 175 (1982). Thus, plaintiffs need not show that their emotional anguish resulted from their fear of immediate illness or disease, but rather that it was foreseeable on the part of defendants that escaping contaminants would cause fear of cancer if plaintiffs found the contaminants in their water.
Berman and Portee are distinguishable from the instant case in that they recognized a cause of action for emotional trauma because of physical injury to a loved one. But see Tysenn v. Johns-Manville Corp., 517 F. Supp. 1290 (E.D.Pa. 1981). Plaintiffs' claim of emotional anguish caused by finding contaminants in their groundwater is more analagous to the claim in Falzone in that plaintiffs are alleging to be the direct victims of the tortious conduct of the township. Thus, the criteria requiring proof of substantial bodily injury or sickness as a result of the emotional trauma remains as an essential element of proof. No case involving a claim for unintentional harm has, since Falzone, with the exception of Berman and Portee, extended the right to recover for emotional distress without a showing of substantial injury or sickness. Even Portee requires proof of severe emotional distress in order to recover. The fear of cancer experienced by plaintiffs exposed to contamination in their well water does not, in itself, provide enough of a basis for a claim *571 for emotional anguish. In order for a claim of "cancerphobia" to be compensable, evidence must be presented to support a finding that emotional injury as evidenced by substantial bodily injury or sickness has resulted from knowledge that plaintiffs have ingested contaminants. Otherwise, the task of evaluating and quantifying each person's apprehension in every groundwater pollution case, each of which might involve hundreds, if not thousands of residents, would become prodigious.
Plaintiffs argue that if their mental and emotional suffering is not compensable as an injury by itself, it is cognizable as associated with a physical injury suffered by them. They argue that the ingestion of the chemicals caused an alteration or change to their bodies, albeit negligible, and that this constitutes a physical injury. They rely upon Porter v. Delaware, L. & W.R.R. Co., 73 N.J.L. 405 (Sup.Ct. 1906). However, in Porter plaintiff's claim of fright was cognizable because an overhead railway bridge fell, nearly hitting plaintiff, and she was hit in the neck with debris with dust falling into her eyes. That direct physical impact was sufficient to justify a claim for fright. No such immediate and direct physical impact and injury occurred to plaintiffs in this action. It is unclear exactly what change, if any, has occurred in the plaintiffs' organs which might be a basis of a claim of bodily injury.
Because of the unusual nature of plaintiffs' claims and the type of bodily injury complained of, a full record should be made before the court decides whether there was an "impact" sufficient to support a claim of emotional distress. Accordingly, the court finds the following questions exist:
(1) Was it reasonably foreseeable on the part of the township that their negligence in permitting contaminants to escape would cause the type of fear experienced by plaintiffs?
(2) What is the nature of the impact to plaintiffs' body caused by the ingestion of these contaminants?
(3) Are the emotional injuries complained of by plaintiffs sufficiently severe to be compensable under present case law?
*572 In light of the existence of these questions, defendant's motion for summary judgment as to these issues is denied. The resolution of these questions, however, and each of plaintiffs' claims for emotional distress, should be resolved as questions of law after all testimony has been received. The court must determine whether the harm claimed to have been suffered by plaintiffs is compensable. If evidence will support a finding of such injury in any of the plaintiffs, then it may be submitted to the jury as part of plaintiffs' damage claim. Additionally, it will initially be for the court to determine whether the response and resulting mental illness was idiosyncratic and not foreseeable, or of a type readily expected from defendant's conduct. See Caputzal v. The Lindsay Co., 48 N.J. 69 (1966).

Medical Surveillance
Rejection by the court of plaintiffs' claim of enhanced risk and its limitation of claims for emotional distress is not dispositive of plaintiffs' claim for medical costs for future testing, which they allege is necessitated by exposure to the chemicals.
Experts will testify that it is medically necessary to perform examinations and tests for the early detection of cancer, and that conventional medical tests are inadequate. Future examinations to detect changes in immunity, the presence of cellular mutation and the presence of tumor antigens should be performed.
Damages may be recovered for the prospective consequences of a tortious injury. Coll v. Sherry, 29 N.J. 166, 174 (1959). It is not the reasonable probability of whether plaintiffs will suffer cancer in the future that should determine whether medical surveillance is necessary. Rather, it is whether it is necessary, based on medical judgment, that a plaintiff who has been exposed to known carcinogens at various levels should undergo annual medical testing in order to properly diagnose the warning signs of the development of the disease. If it is necessary, then the probability of the need for that medical *573 surveillance is cognizable as part of plaintiffs' claim. Schroeder v. Perkel, 87 N.J. 53, 69 (1981). If plaintiffs are deprived of any necessary diagnostic services in the future because they have no source of funds available to pay for the testing, the consequences may result in serious, if not fatal illness. Public policy thus supports a conclusion that if such illness could be prevented by surveillance, then the tort feasor should bear the costs. Is it reasonable to compel a plaintiff to suffer the consequence of a serious if not fatal illness before defendant's tortious conduct is actionable, when reasonable surveillance might prevent the sickness? Plaintiffs' expert reports adequately support their allegation that future testing is necessary and that its necessity was caused by defendants' negligence. Defendants' motion to dismiss this part of plaintiffs' claim is, therefore, denied.

42 U.S.C.A. § 1983
Plaintiffs argue that the contamination of their well water and resulting ingestion of injurious chemicals was a violation of substantive rights to life, liberty and property arising from the due process clause of the Fourteenth Amendment. They argue that defendants' conduct violated 42 U.S.C.A. § 1983, which provides that
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
The invasion took place, plaintiffs argue, when chemicals having escaped from defendant's landfill, seeped into plaintiffs' wells and eventually were ingested into their bodies.
Plaintiffs' first claim that defendants' conduct deprived them of liberty without due process of law by invading their physical and bodily integrity. Their claim of a § 1983 violation is somewhat unclear. If the claim is that they have a constitutional right to an environment free of toxic chemicals or contaminants, the claim is rejected, since no case has been found to have *574 elevated demands for a clean environment to constitutional dimension. Federal Emp. for Non-Smokers' Rights v. U.S., 446 F. Supp. 181, 184-185 (D.D.C. 1978); aff'd 598 F.2d 310 (D.C. Cir.1979), cert. den. 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979).
Plaintiffs' claim that they were deprived of their liberty without due process of law because of an invasion to their bodies by the contaminants that escaped from defendant's landfill and seeped into plaintiffs' well water. This claim is also without merit. Cases recognizing a § 1983 claim for the violation of one's bodily integrity involve direct, active and intentional action on the part of the government, or one acting under color of state law. Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), use of corporal punishment in schools; Romeo v. Youngberg, 644 F.2d 147 (3d Cir.1980), physical attacks upon a resident of a state mental hospital; Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), experiment with sterilization; Hughes v. Rowe, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), prisoner placed in solitary confinement without proper hearing. Plaintiffs' pleadings and discovery fall short of establishing the type of conduct on the part of defendant township and engineer that would support a claim of unjustified intrusion or personal security. Here, the injury was caused not by a direct intentional tort, but rather as a result of an indirect process of escaping contaminants from the landfill over a long period of time which, it is alleged, ultimately were ingested by the plaintiffs.
Plaintiffs further claim that the negligent contamination of their wells resulted in a taking or inverse condemnation cognizable in an action under 42 U.S.C.A. § 1983.
Plaintiffs' claim is not supported by federal case law. In Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court made it clear that the Fourteenth Amendment protects only against deprivations "without due process of law." 451 U.S. at 537, 101 S.Ct. at 1913, quoting *575 Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). In Parratt an inmate at a Nebraska state prison brought suit under § 1983 alleging that state prison officials had negligently deprived him of property without due process of law. Certain hobby materials ordered through the mail by the prisoner were lost after delivery to the prison. The court held that even though the "under color of state law" requirement was satisfied by the alleged actions of the officials, and even though there was a "deprivation" of "property," due process was not violated. The Nebraska State Tort Claims Act, the court held, provided sufficient remedy to persons who are deprived of property through the negligence of the state. Parratt v. Taylor, 451 U.S. at 543, 101 S.Ct. at 1916-1917. The court stated:
Our past cases mandate that some kind of hearing is required at some time before a State finally deprives a person of his property interests. The fundamental requirement of due process is the opportunity to be heard and it is an "opportunity which must be granted at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 [85 S.Ct. 1187, 1191], 14 L.Ed.2d 62 (1965). [Id. at 540, 101 S.Ct. at 1915].
The court noted that to accept plaintiffs' claim
... would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." Paul v. Davis, 424 U.S. 693, 701 [96 S.Ct. 1155, 1160-1161], 47 L.Ed.2d 405 (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society. [Id. at 544, 101 S.Ct. at 1917].
In York v. City of Cedartown, 648 F.2d 231 (1981), the Fifth Circuit held that allegations that a municipality negligently designed and constructed a drainage system resulting in sewerage being deposited on plaintiff's property, thereby diminishing its value, were insufficient to raise an ordinary tort to the stature of a violation of § 1983. It noted that the action was *576 one in negligence and did not suggest an abuse of governmental power. Id. at 233. In the instant case, if any or all of the plaintiffs are able to show that they have been deprived of their property due to the conduct of the defendants, they have an adequate state remedy, and have not been deprived of their property without due process of law. Plaintiffs' means of adequate redress is to prove their claim of negligence, trespass or nuisance and to establish property value loss or property damage as a result of defendants' tortious conduct. Even though the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq., may preclude plaintiffs from recovering punitive damages, N.J.S.A. 59:9-2(c), and deprive them from seeking other remedies available to them under § 1983, that does not mean that State remedies are not adequate to satisfy the requirement of due process. Parratt v. Taylor, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981).
Allegations that a land use plan adopted by a bi-state agency had destroyed the economic value of plaintiff's land were found to be sufficient to support a § 1983 claim in Lake County Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). Damages under § 1983 have been expressly recognized under Sheerr v. Evesham Twp., 184 N.J. Super. 11 (Law Div. 1982), where it was held that if a zoning regulation results in a taking under the Fifth and Fourteenth Amendments, it would satisfy the damage criteria applicable to civil rights actions. However, the taking in a zoning case, whether it be temporary or permanent, may leave the property owner without any remedy to recover damages sustained by him until the regulation is declared invalid. The zoning cases are, therefore, distinguishable from an action in negligence.
Plaintiffs argue that Parratt is distinguishable because it dealt with the deprivation of procedural due process and does not apply to a claim of deprivation of property without just compensation. Although the holding in Parratt applied to procedural due process, it dealt with a substantive right of property, that is, the hobby kit of the prisoner and its taking without just compensation. In every case cited by the court in Parratt the plaintiff had been deprived of property without due process *577 because of an established state practice or procedure. The result in each of these cases was a taking without just compensation. In this action, it cannot be claimed that the negligent conduct of the township allegedly resulting in groundwater pollution is as a result of an established state procedure, unlike Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), where the established state procedure itself destroyed the plaintiff's property interest.
It is irrelevant, for purposes of § 1983 analysis, whether a plaintiff's complaint alleging negligence is framed in terms of a Fifth Amendment "taking without just compensation" or a Fourteenth Amendment "deprivation of property."[1] In either instance, to make out a § 1983 claim, the negligent taking or deprivation must be without due process. Parratt, supra. To suggest that two different results are required, depending upon which terminology a plaintiff chooses to use in his complaint, would be anomalous.
The essence of due process is the opportunity to be heard. Parratt, 451 U.S. at 540, 101 S.Ct. at 1915. "Substantive" due process rights are protected and vindicated by procedural due process. In this case a full jury trial on the principles of common law negligence is the mechanism which provides plaintiffs procedural due process to protect plaintiffs' substantive right not to be deprived of their property. Since the court finds that an adequate state remedy exists, I hold that plaintiffs have no claim under 42 U.S.C. § 1983 upon which relief can be granted. Accordingly, the court grants defendant's motion for summary judgment as to plaintiffs' claim under the Civil Rights Act.
In summary, the court makes the following findings:
(1) If plaintiffs' proofs do not establish that they have or will in the future, to a degree of reasonable medical probability, suffer injury or sickness, they do not have an injury cognizable at law. Based on the medical reports submitted as well as other discovery, defendants' motion for summary judgment as to this claim is granted.
*578 (2) Defendants' motion for summary judgment as to the claim of cancerphobia, by virtue of the existing questions to be resolved at time of trial is denied.
(3) Defendants' motion dismissing plaintiffs' claim for medical surveillance costs is denied.
(4) Defendants' motion for summary judgment as to plaintiffs' 42 U.S.C. § 1983 claim is granted.
NOTES
[1] Of course, "§ 1983 was enacted in 1871 as one of the statutes intended to implement the Fourteenth Amendment," 451 U.S. at 554, n. 13, 101 S.Ct. at 1922, n. 13 (Powell, J., concurring), not the Fifth Amendment.