202 N.J. Super. 556 (1985)
495 A.2d 495
RICHARD DEVLIN AND CATHERINE DEVLIN, HIS WIFE, PLAINTIFFS,
v.
JOHNS-MANVILLE CORPORATION, ET ALS., DEFENDANTS.
DOMINIC FRANKLIN AND JOSEPHINE FRANKLIN, HIS WIFE, PLAINTIFFS,
v.
JOHNS-MANVILLE CORPORATION, ET ALS., DEFENDANTS.
CARMEN COSENTINO AND OLGA COSENTINO, HIS WIFE, PLAINTIFFS,
v.
JOHNS-MANVILLE CORPORATION, ET ALS., DEFENDANTS.
WILLIAM KENNY AND JOAN KENNY, HIS WIFE, PLAINTIFFS,
v.
JOHNS-MANVILLE CORPORATION, ET ALS., DEFENDANTS.
PAUL EYPPER, PLAINTIFF,
v.
FEDERAL SHIPBUILDING & DRY DOCK, CO., ET AL., DEFENDANTS.
VICTOR FIORINO AND LOUISE FIORINO, HIS WIFE, PLAINTIFFS,
v.
FEDERAL SHIPBUILDING & DRY DOCK, CO., ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided March 8, 1985.
*559 Karl N. McConnell, for plaintiffs Devlin, Franklin, Cosentino, Kenny and Myers (Greitzer & Locks, attorneys).
Jane B. Cantor, for plaintiffs Eypper and Fiorino (Garruto, Galex & Cantor, attorneys).
Michael A. Tanenbaum, for defendant Celotex Corp. (McCarter & English, attorneys).
KEEFE, J.S.C.
The issues presented by this motion are whether plaintiffs,[1] who claim to be suffering from asbestosis, can recover damages for the enhanced risk of cancer to which asbestosis gives rise and, for the concomitant fear of cancer (cancerphobia) from which plaintiffs now claim to suffer as a result of their enhanced risk. None of plaintiffs are currently suffering from any form of cancer. Counsel for plaintiffs acknowledge that their experts cannot state, to a reasonable medical probability, that any one of plaintiffs will get cancer in the future.[2] As *560 such, it is noted at the outset that plaintiffs do not assert a claim for prospective cancer since the available medical testimony will not meet the reasonable medical probability standard required in this State. See Coll v. Sherry, 29 N.J. 166, 175 (1959).

RECOVERY FOR FEAR OF CANCER (CANCERPHOBIA)
Plaintiffs in this action assert that they are suffering from anxiety and related symptoms due to their fear of developing cancer. This fear has been caused in part, by their having been told by their physicians that they are currently at a greatly increased risk of developing cancer. This increased risk creates the need for continuing medical surveillance in order to monitor for any cancerous developments.
The courts of this state have clearly recognized that "mental and emotional distress is just as `real' as physical pain, and that its valuation is no more difficult." Berman v. Allen, 80 N.J. 421, 433 (1979). In Portee v. Jaffe, 84 N.J. 88 (1980), it was noted "[s]ince Falzone, this court's decisions have shown no hostility to the imposition of liability for negligently caused mental or emotional distress even without an attendant risk of physical harm." Id. at 95. In ascertaining whether liability can be imposed the standard to be applied:
[i]s one of reasonable foreseeability, [citation omitted] more directly stated, we must determine whether the defendants owed a duty to the plaintiff that was violated.... [Ibid.]
Utilizing foreseeability to determine whether liability can be found requires that the emotional harm which has occurred be foreseeable in a "person normally constituted" who was within the "zone of risk" of those people who could potentially *561 be affected by the defendant's conduct. Caputzal v. Lindsay Co., 48 N.J. 69, 76-77 (1966). As such, in ascertaining whether a claim for emotional harm shall be allowed it is not the severity or consequence of the particular emotional harm suffered which is solely determinative. Instead, the applicable test is one of reasonable foreseeability analyzed in the context of the defendant's legal duty to the plaintiff. See Portee, supra at 95.
The duty of manufacturers and distributors of asbestos has been addressed in detail in Beshada v. Johns-Manville Products Corp., 90 N.J. 191 (1982). The obligation of defendants is to market a product that is fit, suitable and safe for its foreseeable purpose. In discharging this duty the law presumes that defendants are aware of the dangers inherent in their products. Clearly plaintiffs were foreseeable users of defendants' products and therefore they come within the zone of risk discussed in Caputzal.
Further, the fear complained of by plaintiffs, in light of all the facts and circumstances, cannot be deemed to be idiosyncratic or unexpected in "normally constituted people." Plaintiffs have been told by their doctors of the increased risk and the need for medical surveillance to monitor for potential cancerous developments. All plaintiffs claim to be suffering from physical manifestations as a result of their exposure. Further, many have seen friends and co-workers suffer often fatal consequences as a result of exposure to asbestos. As such plaintiffs here fall within the boundaries of the law set forth in both Portee and Caputzal.
Recovery for the fear of future cancer is not without precedent in this State. In Lorenc v. Chemirad, 37 N.J. 56 (1962) plaintiff was burned by a corrosive chemical which was improperly packaged. The area of his hand which was injured was chronically ulcerated and intermittently broke down. During these periods plaintiff, who was a doctor, became concerned that he was developing a malignancy. On appeal, the Supreme *562 Court implicitly allowed recovery for the fear of future cancer under such circumstances by holding:
So, although, if we were acting as original triers of the fact, we might have rejected the claim of probably resulting cancer, as distinguished from a neurosis based on a fear of development of that disease, we cannot say there was no justification for a finding favorable to plaintiff regarding its probable future onset. In addition, there is no way of knowing from the verdict whether the jury accepted the suggestion of probable future cancer, or simply allowed some compensation for the plaintiff's fear of development of that disease. [Id. at 76; emphasis supplied]
More recently, in Evers v. Dollinger, 95 N.J. 399 (1984) the Supreme Court expressly recognized a cause of action for emotional harm based on the fear of future cancer. In Evers the defendant doctor failed to properly treat and diagnose a lump in plaintiff's breast which thereafter increased in size and was eventually removed in an extensive mastectomy. Plaintiff asserted that the delay in properly diagnosing her condition caused the tumor to grow, increased her risk of future cancer and caused emotional harm. The Court held that on retrial plaintiff should be permitted to present her claims for mental and emotional injury.
[p]laintiff was prepared to show that she suffered anxiety, emotional anguish and mental distress. These were attributable not solely to her having the cancer but also to the growth of the tumor during the time proper treatment was withheld and from the realization, following the confirmation of her malignancy, that defendant's delay in her treatment had increased the risk that she would again fall victim, perhaps fatally, to the disease. [Id. at 406; emphasis supplied]
....
[C]ourts have come to recognize that mental and emotional distress is just as `real' as physical pain, and that its valuation is no more difficult. Berman v. Allen, 80 N.J. 421, 433 (1979); see Schroeder v. Perkel, 87 N.J. 53 (1981). Such distress could well encompass concerns over the anticipated future consequences of malpractice. [Id. at 410; emphasis supplied]
The recent case of Ayers v. Jackson Twp., 189 N.J. Super. 561 (Law Div. 1983) in which plaintiffs were denied recovery for their fear of future cancer is clearly distinguishable from the case at bar. None of the plaintiffs in Ayers were presently suffering from physical illness as a result of their ingestion of *563 pollutants. The experts in that case conceded that there was no way to ascertain if any of the plaintiffs would in fact ever suffer from any illness in the future. The emotional injury of which plaintiffs in this case complain stems from the substantial bodily harm they have already suffered as a result of ingesting asbestos over an extended period of time. In this case there has been "[i]mmediate and direct physical impact and injury" which was non existent in factual situations presented in Ayers. Id. at 571.
Allowing plaintiffs in a situation such as this to recover for their fear of cancer will not lead to recovery for speculative claims. Plaintiffs will be required to provide the following at trial in order to recover from their alleged fear:
1. Plaintiff is currently suffering from serious fear or emotional distress or a clinically diagnosed phobia of cancer.
2. The fear was proximately caused by exposure to asbestos.
3. Plaintiff's fear of getting cancer due to their exposure to asbestos is reasonable.
4. Defendants are legally responsible for plaintiff's exposure to asbestos. [See Arnett v. Dow Chemical Co., No. 729586 (Cal.Super.Ct. March 21, 1983)]
If all of these standards are met, the reliability and reasonableness of plaintiffs' claim regarding their fear can be safely assured.
The issue of whether or not an expert will be needed to testify regarding the emotional harm plaintiffs suffer has been raised by both plaintiffs and defendants. In this context this court notes that there is a difference between a claim for "fear of cancer" versus a claim for "cancerphobia." With respect to the former, a plaintiff can testify to his fear, preoccupation and distress resulting from the enhanced risk of cancer about which he has been informed and for which he will require periodic surveillance. The cause and effect relationship between the plaintiff's knowledge and the resulting emotional distress is not so esoteric that lay jurors will require the assistance of experts. On the other hand, any testimony that attempts to relate the *564 subjective element of fear with a somatic condition that is not generally accepted as related will not be admitted unless supported by expert opinion. Likewise, it would appear that a claim for damages based on the existence of a phobia will require expert testimony. Schmidt's Attorney's Dictionary of Medicine (Bender, volumes 1 & 2) defines cancerphobia as "an extreme fear of getting cancer." A phobia is defined as "an exaggerated, persistent and often irrational fear of some particular object, person or situation." Cancerphobia is a recognized psychiatric illness. The claim is such that it requires skilled medical experts to determine its presence, its cause and its extent. See Dalton v. Gesser, 72 N.J. Super. 100, 111 (App.Div. 1962); Kelly v. Borwegen, 95 N.J. Super. 240, 242-244 (App. Div. 1967); Bulter v. Acme Markets, Inc., 89 N.J. 270, 283 (1982).

ENHANCED RISK
Plaintiffs seek to recover damages for the enhanced risk of contracting cancer. As stated earlier, they acknowledge their inability to meet the standard of proof required to recover for prospective injury, i.e., proof to a reasonable medical probability. Coll v. Sherry, supra. There is no case in this jurisdiction which has allowed recovery for an enhanced risk of future harm standing alone.
In Evers, supra, the Court allowed recovery for the increased risk of cancer when the risk created actually came to fruition.
The Court specifically noted:
[t]he harm of which there was but increased risk has now become a reality. Hence, we need not determine whether the unquantified (and unquantifiable) but nevertheless certain increase in the risk, standing alone, is sufficient injury to sustain plaintiff's cause of action. [Evers, supra, 95 N.J. at 406]
....
Whether `increased risk', standing alone, is an actionable element of damage in a malpractice case is a provocative question, the determination of which we leave for an appeal that requires, as this case does not, the answer. [Id. at 412, n. 7]
*565 Plaintiffs do not attempt to explain how the damage for this claim can be quantified, or, for that matter, what damages in fact result from this enhanced risk other than emotional harm and the need for increased medical surveillance which have already been recognized as compensable by this court.
In light of the foregoing this court rejects plaintiffs' claim for recovery based on the enhanced risk of cancer in any context other than emotional harm or the need for increased medical surveillance. In denying plaintiffs' damage claim at this time for enhanced risk this court concomitantly recognizes their right to sue in the future should the increased risk created by the exposure to asbestos come to fruition. As such this court's holding does not leave plaintiffs without a remedy if any one or all of them should develop cancer in the future.
Plaintiffs' right to sue at a later date for an independent injury which arose out of the same exposure as the original injury raises two related issues: the application of the statute of limitations and the impact of the entire controversy doctrine which prevents claim splitting.
The effect of the statute of limitations issue was addressed in Pierce v. Johns-Manville Sales Corp., (Maryland App.Ct. 1982), Maryland, Asbestos Litigation Reporter, September 23, 1983 at 7,204, and the issue was framed as follows:
[t]he central question here is whether a cause of action for damages resulting from lung cancer accrues at the time asbestosis, allegedly caused by exposure to asbestos, is manifested or at a subsequent time, when lung cancer, allegedly caused by the same asbestos exposure, is manifested. [Ibid.]
In Pierce plaintiff did not file a claim when he was diagnosed as having asbestosis in early 1973. Plaintiff was later diagnosed with lung cancer related to asbestos exposure on November 10, 1979 and died on January 25, 1980. Pierce's widow filed a survivorship and wrongful death action on March 13, 1980, for damages arising only from the lung cancer. Defendant Johns-Manville asserted that an indivisible cause of action accrued in 1973 when Pierce discovered his asbestosis and it was at that time that he was obligated to sue and seek recovery for *566 all claims including future damages. The Maryland court rejected this contention and noted:
[i]f suit had been filed within three years of the manifestation of Pierce's asbestosis it is highly likely that Johns-Manville would have successfully defended on the ground that the chance that Pierce would develop lung cancer was too speculative to support a damage award. [Id. at 7210]
In fact, in two recent Maryland cases Johns-Manville did successfully defend against claims for prospective lung cancer when plaintiff was currently suffering only from asbestosis on the ground that, the chance of plaintiffs developing cancer was too speculative. See Schmidt v. Johns-Manville Corp., Civ. No. H-80-3339 (D.Md. 1983), Wright v. Johns-Manville Corp., Civ.No. H-80-3358 (D.Md. 1983) Asbestos Litigation Reporter, March 11, 1983 at 6322.
In conclusion, the court held that "when exposure to asbestos initially results in the manifestation of asbestosis, and subsequently results in the manifestation of lung cancer, a separate, distinct latent disease,[3] and no tort recovery has been sought *567 for the harm resulting from asbestosis, a cause of action resulting from lung cancer accrues when lung cancer is or reasonably should have been discovered." Pierce, Asbestos Litigation Reporter at 7,211.
In Wilson v. Johns-Manville, 684 F.2d 111 (D.C. Cir.1982) the court, in a factual situation remarkably similar to that presented in Pierce, reached the same result. The court in Wilson summarily framed the issue before it and the result as follows:
We are asked to decide whether manifestation of any asbestos related disease (in this case, asbestosis) triggers the running of the statute of limitations on all separate, distinct, and later-manifested diseases (here, malignant mesothelioma, an extremely lethal form of cancer) engendered by the same asbestos exposure. We hold that time to commence litigation does not begin to run on a separate and distinct disease until that disease becomes manifest. [Id. at 112]
The facts of Wilson were almost identical to Pierce in that plaintiff did not sue upon learning of his asbestosis. No action was filed until after his death and then only for damages arising from and related to mesothelioma. Defendant Johns-Manville made the same argument as was made in Pierce. Wilson found that asbestosis and mesothelioma are two separate and distinct diseases and that the latter is not a complication of the former. (See Id. at 117, n. 33; defendant Johns-Manville conceded that asbestosis and mesothelioma are separate and distinct diseases).
Finally, in Ayers v. Jackson Township, supra, the court in denying plaintiffs' right to sue for enhanced risk of cancer standing alone, said:
To hold that enhancement of risk is not actionable does not leave plaintiffs without a remedy, if in the future any plaintiff suffers from a physical condition which can medically be attributed to ingestion of alleged contaminants. Our `discovery rule' provides that the statute of limitations applicable to a personal injury claim will not begin to run until a plaintiff becomes aware that he has sustained injury or until he becomes aware that his damage was caused *568 by the fault of another. [citations omitted] If and when a plaintiff manifests a physical condition that could medically be attributed to ingestion of the alleged contaminants, his cause of action will have survived the statute of limitations, N.J.S.A. 2:14-2. [Ayers, supra, 189 N.J. Super. at 568]
In summary, this court holds that asbestosis and asbestos related cancer are separate and distinct disease processes. Each may exist apart from the other and may stem from the same exposure to asbestos. The cause of action for each disease may accrue on widely divergent dates since each disease has its own latency period between exposure and manifestation of disease.[4] In both Pierce and Wilson, plaintiff had not filed a prior claim for asbestosis and the courts held that the statute of limitations had not run on the cancer claim. In the cases now under consideration plaintiffs are proceeding to trial on the asbestosis claims and are being prohibited from receiving damages due to the enhanced risk of cancer. The factual setting in this case is thus different from Pierce and Wilson and cannot be resolved solely in the context of a statute of limitations analysis.
Therefore, the second issue implicated by this decision is that of claim splitting. Defendants may argue that the statute of limitations and entire controversy doctrine will prevent future litigation by any plaintiffs who contract an asbestos related cancer. Such an argument would present the following syllogism:
1. A plaintiff who fails to sue within two years after he is diagnosed with asbestosis but later sues when a malignancy develops is barred by reason of the statute of limitations.
2. Alternatively, a plaintiff who sues within two years after asbestosis is diagnosed and cannot then prove that future malignancy is probable cannot later sue if a malignancy develops because such a suit is barred by the entire controversy doctrine.
Defendants argument imparts ultimate meaning to the phrase "catch 22." Using defendants' approach a plaintiff would not be able to recover for cancer unless he institutes suit within *569 two years of discovering asbestosis and manifests cancer during the pendency of that suit  an event that is wholly dependent on the vagaries of nature and the ability of the court system to bring the asbestosis claim to trial. See Wilson, supra, 684 F.2d at 120.
Initially it must be noted that the Restatement, Judgments, 2d, § 26, provides that the general rules against claim splitting are rendered inapplicable when:
(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action or;
(f) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason.
The entire controversy doctrine has been developed to prevent delay, expense, and waste that is created when litigation is fragmented. Thus, parties are required to dispose of all aspects of a single lawsuit in one proceeding. See Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277 (App.Div. 1977), certif. den. 75 N.J. 528 (1977) and Falcone v. Middlesex County Medical Society, 47 N.J. 92 (1966). Since this court has already held that plaintiffs cannot sue for their increased risk at this time and, plaintiffs themselves admit that they cannot prove the probability of prospective injury, the facts before this court do not truly implicate the entire controversy doctrine. The simple fact is that at this time there is no cause of action presently existing either for the increased risk of cancer or for cancer itself.
The difficulties created by latent diseases and the need for appropriate responses by the judiciary has been addressed in Martinez-Ferrer v. Richardson-Merrell, 164 Cal. Rptr. 591, 105 Cal. App.3d 318 (1980). The court in that case was faced with a factual situation similar to that in Wilson and Pierce. Plaintiff sustained an injury as a result of ingesting a drug. The injury, which manifested within six months, was relatively minor and cleared up with treatment. Approximately 15 years later a far more serious injury became manifest. Defendant drug company made the argument that one cause of action was *570 triggered for all injuries, latent and patent, when the first injury manifested itself and to hold anything else would allow claim splitting. The court noted that the problems presented resulted, in part, from:
The simple fact is that rules developed against the relatively unsophisticated backdrops of barroom brawls, intersection collisions and slips and falls lose some of their relevance in these days of miracle drugs with their wonderous, unintended, unanticipated long-delayed side effects.
....
[T]he response of the courts (to advances in science and technology) can be either to adhere rigidly to prior doctrine, denying recovery to those injured by such products, or to fashion remedies to meet these changing needs. [Martinez-Ferrer, supra, 164 Cal. Rptr. at 595 citing Sindell v. Abbott Laboratories, 26 Cal.3d. 588, 610, 163 Cal. Rptr. 132, 144, 607 P.2d 924, 936 (1980)]
In allowing plaintiff to proceed with his claim the court commented that the rules applicable to litigation involving, among other things, progressive diseases are in flux and it is clear "which way the wind is blowing":
[a]way from a blind adherence to rigid concepts of what constitutes a cause of action and toward a set of rules which will enable plaintiffs to recover for just claims where that is possible without prejudice to defendants or insult to established rules of law, such as the merger aspect of the rule of res judicata. We make no attempt to even summarize where all this may lead. We are, however, convinced that under the peculiar circumstances of this case it would be a miscarriage of justice not to permit plaintiff to go to trial.... [Id. at 597]
Defendants may well argue that this court's holding will lead to an increase in an already burdensome amount of asbestos related litigation. This may well be the case but "the fear of an expansion of litigation should not deter courts from granting relief in meritorious litigation; the proper remedy is an expansion of the judicial machinery, not a decrease in the availability of justice." Falzone v. Busch, 45 N.J. 559, 567 (1965).
In conclusion plaintiffs cannot recover for the increased risk of cancer standing alone. However, evidence of this increased risk may be submitted to the jury as it relates to the issues of emotional harm and the need for future medical surveillance with an appropriate limiting instruction.
NOTES
[1] This motion was made returnable in seven individual cases by McCarter & English acting in its capacity as special medical counsel to defendant, Celotex Corporation. Five of the plaintiffs, Devlin, Franklin, Cosentino, Kenny and Myers were employed as St. Johnsbury truck drivers. The remaining two plaintiffs, Fiorino and Eypper were employed at Federal Shipbuilding and Dry Dock, Company, the former as a pipewelder, the latter an electrician.
[2] All plaintiffs were examined by Dr. Susan Daum. The following excerpt is representative of the language appearing in all the medical reports except those of plaintiffs Eypper and Consentino:

Because of the characteristic effects of asbestos, progressive pulmonary disease is likely. As well, the possibility of malignancy is greatly increased. There is thus continuing need for reexamination on at least semiannual basis.
The reports regarding Cosentino and Eypper do not mention the increased risk of cancer or the need for increased medical surveillance.
[3] The Pierce court, in reaching its determination that mesothelioma and asbestosis, were two separate diseases, appears to have relied upon the affidavit of Dr. Russel S. Fischer, Chief Medical Examiner for the State of Maryland. The pertinent part of the affidavit stated:

The diseases of mesothelioma and lung cancer are also associated with prior exposure to asbestos by inhalation. Lung cancer is a malignant disease that involves the cells found within the substance of the lung and the airways of the lung. It is a progressive disease which nearly always kills the victim within a year of its diagnosis, in the inoperable state. The duration of the developmental process of lung cancer from inception to gross clinical manifestation cannot be stated with absolute certainty but modern medical opinion indicates this time lag to be on the order of months to a year or two at the extreme.
This kind of disease process is entirely different from the disease process involved with asbestosis, though they both may be associated with an individual's exposure to the mineral asbestos.
It is a medically accepted fact that an individual who has been diagnosed with the disease of asbestosis will not inevitably contract either of the cancers mentioned above. It is also true that individuals who have been exposed to asbestos and who develop lung cancer or mesothelioma, as a result of such exposure, may well not have significant asbestosis. These two situations are possible because, although all these diseases are associated with the inhalation of asbestos fibers, there is at the present time no medically accepted link between the development of malignant diseases and the development of asbestosis. [Pierce, Asbestos Litigation Reporter, supra at 7206, n. 4; emphasis supplied]
[4] See Selikoff and Lee, Asbestos and Disease, (1978) Chapter 10.