740 A.2d 146

J.W., PLAINTIFF, v. L.R., DEFENDANT–RESPONDENT.

IN THE MATTER OF MICHAEL J. PIMPINELLI,
ESQ., APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 14, 1999—Decided October 13, 1999.

Before Judges PRESSLER, LANDAU and ARNOLD.

Michael J. Pimpinelli, Esq. *pro se.*

*Shabel & Shabel,* attorneys for respondent (*Stephen Denittis,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

The appellant in this case is Michael Pimpinelli, Esq., attorney for J. W., who is the plaintiff in the above-captioned matter. He appeals from an order of the trial judge, entered *sua sponte* on order to show cause, that assessed him with a *R.* 1:4–8 sanction [1]

---

[1] A certification submitted to the judge with plaintiff's motion for reconsideration indicated that upon inquiry, the judge's law clerk initially called Pimpinelli's office to advise that *R.* 4:42–9 and *N.J.S.A.* 2A:15–59.1 furnished the basis for sanction. *R.* 1:4–8 was later cited as the applicable authority in the court's

requiring personal payment to defendant's counsel, Shabel & Shabel, Esqs. of $1,500 for his "sudden change in position" during oral argument on a motion for summary judgment.

After depositions of plaintiff's possible expert witnesses by the defendant's attorney, Pimpinelli wrote to advise that he decided not to call an expert to support damages arising from ten years of sexual abuse by plaintiff's father that she alleged had continued until she was sixteen years of age.

Pimpinelli repeated this representation during the pre-trial arbitration proceeding.

Based upon that advice, defendant's attorney moved for summary judgment, urging that no causation could be established absent expert testimony. In reply, Pimpinelli argued that plaintiff's testimony of the sexual abuse by her father, with details of its consequences outlined in her certification in opposition to summary judgment, was sufficient for a jury to conclude that she had suffered pain and suffering warranting compensatory as well as punitive damages without the need for expert testimony. He also relied upon the legislative policy established by *N.J.S.A.* 2A:61B–1.[2] Plaintiff's opposing certification stated, in pertinent part:

> 2. At the time of trial, I will testify as to the pain and fear I experienced as my father was performing the acts of sexual abuse upon me. I will testify as to my constant fear and apprehension that he would come into my bedroom at night and molest me.

> 3. I will testify concerning how these acts of sexual abuse interfered with my enjoyment of my childhood. Every night I would fear going to bed knowing that he might come into my room to molest me. As a child, I never felt safe.

findings of fact and conclusions of law entered upon plaintiff's motion for reconsideration.

[2] *N.J.S.A.* 2A:61B–1, effective September 24, 1992, is applicable to any action thereafter commenced. It provides that in a civil action brought by a sexually abused infant under the act, "damages in the amount of $10,000, plus reasonable attorney's fees, or actual damages, whichever is greater" shall be awarded to a prevailing plaintiff. *N.J.S.A.* 2A:61B–1h.

4. In my early teens, in order to dull the emotional pain and fear, I indulged in the use of alcoholic beverages and drugs. At that time, I could only obtain relief from the mental anxiety and pain by numbing myself with drugs and alcohol.

5. I will testify that when I think about the sexual abuse, I experience a pain in my stomach.

6. My testimony will include my belief that the sexual abuse caused me to experience depression, low self-esteem and a multitude of anxieties. As a result of the sexual abuse, I believe that I will always have difficulty being in a physical and emotional relationship with any man.

Pimpinelli concedes that when the judge indicated during oral argument that defendant's motion to bar compensatory damages would be granted if no expert witness on causation was presented, he "changed position" and told the court and counsel that he would call a previously deposed expert witness.

Pimpinelli contends that, contrary to the conclusion of the motion judge, his change of position during argument was not the kind of frivolous litigation conduct contemplated by *R.* 1:4–8. We conclude that Pimpinelli's actions were not frivolous and, therefore, reverse. We do not reach the question whether *R.* 1:4–8 would have furnished a proper basis for sanctions had we agreed with the assessment that Pimpinelli's conduct was frivolous.

The motion judge based his conclusion of frivolous conduct by counsel upon the premise that as a matter of law, without an expert, "your client may be entitled to nominal damage . . . and you may be entitled to punitive damage . . . [b]ut compensatory damages, I don't think you are." The award of *R.* 1:4–8 fees to defendant's attorney was made because, "I don't believe that Mr. Shabel would've filed this motion had he known that you were going to call [an expert] . . ." and because of the unnecessary research required for the court to consider the motion.

On a motion for reconsideration, the judge emphasized that the sanction was imposed because plaintiff's attorney took the "frivolous" and ". . . totally baseless position that an expert was not needed for the actual damage claims contained in this case." If the defendant's motion was not meritorious, however, it need not have been brought, and Pimpinelli would not have been confronted

with the Hobson's choice of either losing defendant's motion and seeking leave to appeal, or, as he did, changing course and agreeing to use the expert. Defendant's summary judgment motion was not meritorious.

█  If believed, no one was better qualified than the victim of ten years of a father's imposed incest to testify to her feelings of dread and terror before, during and after those episodes; to what she felt during her childhood and early teen years; to the pain-numbing substances she resorted to for relief; or to what she now experiences when she recalls the abuse. A jury of average persons does not need an expert to establish causation of that kind of pain and suffering any more than it does to consider the testimony of pain suffered by a person whose broken arm healed, but who says it has ached ever since and no longer enables him to lift weighty objects.

█  Generally, in tort actions, expert testimony is indispensable only when the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment about it. *Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 283, 445 *A.*2d 1141 (1982). Judge Keefe has provided further insight into the question of need for expert testimony in *Devlin v. Johns-Manville Corp.*, 202 *N.J.Super.* 556, 495 *A.*2d 495 (Law Div.1985). There, in the context of persons who had concededly ingested carcinogenic asbestos he noted:

> The issue of whether or not an expert will be needed to testify regarding the emotional harm plaintiffs suffer has been raised by both plaintiffs and defendants. In this context this court notes that there is a difference between a claim for "fear of cancer" versus a claim for "cancerphobia." With respect to the former, a plaintiff can testify to his fear, preoccupation and distress resulting from the enhanced risk of cancer about which he has been informed and for which he will require periodic surveil-lance. The cause and effect relationship between the plaintiff's knowledge and the resulting emotional distress is not so esoteric that lay jurors will require the assistance of experts. On the other hand, any testimony that attempts to relate the subjective element of fear with a somatic condition that is not generally accepted as related will not be admitted unless supported by expert opinion. Likewise, it would appear that a claim for damages based on the existence of a phobia will require expert testimony. *Schmidt's Attorney's Dictionary of Medicine* (Bender, volumes 1 & 2) defines cancerphobia as "an extreme

fear of getting cancer." A phobia is defined as "an exaggerated, persistent and often irrational fear of some particular object, person or situation." Cancerphobia is a recognized psychiatric illness. The claim is such that it requires skilled medical experts to determine its presence, its cause and its extent. *See Dalton v. Gesser,* 72 *N.J.Super.* 100, 111 [178 *A.*2d 64] (App.Div.1962); *Kelly v. Borwegen,* 95 *N.J.Super.* 240, 242–244 [230 *A.*2d 532] (App.Div.1967); *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 283 [445 *A.*2d 1141] (1982).

[*Devlin v. Johns-Manville Corp., supra,* 202 *N.J.Super.* at 563–64, 495 *A.*2d 495.]

*See also Evers v. Dollinger,* 95 *N.J.* 399, 409–10, 471 *A.*2d 405 (1984)(holding that plaintiff's testimony at trial of anxiety and fear may be considered on issue of her mental and emotional suffering.).

■ Paragraphs two through five of plaintiff's certification were plainly adequate to support her claim for compensatory damages without expert testimony. The question of necessity for expert testimony may have been closer on the beliefs of causation expressed in paragraph six of plaintiff's certification. If plaintiff seeks to prove causation of a current medical or psychological condition, of course, competent expert testimony would be required. *See Allendorf v. Kaiserman Enters.,* 266 *N.J.Super.* 662, 672, 630 *A.*2d 402 (App.Div.1993). However, plaintiff's contentions were not so limited, either in her pleadings or in her certification on the motion. Moreover, as to the "beliefs" expressed in paragraph six of the certification, plaintiff could properly testify, for example, that she still experiences sensations of revulsion or fear when relating to the opposite sex and could state how this has affected her life.

■ We note further that an *R.* 1:4–8 attorney's fees sanction is not warranted where the plaintiff has a reasonable good faith belief in the merit of his action. *See, K.D. v. Bozarth,* 313 *N.J.Super.* 561, 574, 713 *A.*2d 546 (App.Div.1998)(applying *McKeown–Brand v. Trump Castle,* 132 *N.J.* 546, 626 *A.*2d 425 (1993) standard of bad faith to *R.* 1:4–8 proceeding), *certif. denied,* 156 *N.J.* 425, 719 *A.*2d 1023 (1998). The *McKeown* court observed that the term "frivolous" should be given a restrictive interpretation for public policy reasons. *McKeown, supra,* 132 *N.J.* at 561–62, 626 *A.*2d 425.

Even assuming, without deciding, that *R.* 1:4–8 could be deemed applicable to an attorney's change of position after notifying an adversary that no expert would be used [3], Pimpinelli's actions were clearly not frivolous. To the contrary, as we have found, no expert was required. Additionally, the motion judge specifically absolved Pimpinelli of any bad faith or malicious intent. In sum, no basis for a sanction exists.

The order under review is reversed.

---

[3] In *Lewis v. Lewis,* 132 *N.J.* 541, 626 *A.2d* 422 (1993), it was held that *N.J.S.A.* 2A:15–59.1 did not apply to motions.