**Linda MERRY, et al., Plaintiffs,**

v.

**WESTINGHOUSE ELECTRIC CORP., Defendant.**

**Civ. A. No. 86–1673.**

United States District Court, M.D. Pennsylvania.

March 14, 1988.

Leslie M. Fields, Kollas, Costopoulos & Foster, Lemoyne, Pa., for plaintiffs.

Gerald J. Williams, Philadelphia, Pa., for Linda Merry, et al.

Terry R. Bossert, Elizabeth A. Dougherty, McNees, Wallace & Nurick, Harrisburg, Pa., Philip J. Katauskas, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Patrick W. Kittredge, Joseph M. Donley, Robert Emmet Hernan, McNees, Wallace & Nurick, Philadelphia, Pa., for Westinghouse Elec.

## MEMORANDUM

CALDWELL, District Judge.

Pending for disposition is Westinghouse's motion for partial summary judgment on all cancer and injury-related claims. For the following reasons, the motion will be denied.

The plaintiffs' complaint provides in relevant part as follows:

65. Plaintiffs have been exposed or will be exposed to the hazardous substances released into the environment by defendant. These substances are known or suspected of causing numerous illnesses, including, but not limited to: cancer, birth defects, damage to human cells, kidney, liver and brain damage, as well as damage to the human immune system.

The plaintiffs claim that the exposures have resulted in *inter alia*, "emotional distress, and fear of injury and disease" as well as "increased risk of cancer and other diseases." Complaint, para. 66.

Before addressing the substance of Westinghouse's motion, we note that a good portion of it has been mooted by the plaintiffs' concession that they are not pursuing a claim for increased risk of illness, *per se*. At page 2 of their brief the plaintiffs write that they "have not sought, and do not seek, damages for the *treatment* of diseases which they have not yet contracted." Instead, they "seek damages for emotional distress arising from their *present* demonstrable exposure to carcinogens and other toxic chemicals as well as the costs of diagnostic procedures necessitated by that exposure." Therefore, we will limit our consideration of Westinghouse's motion to the question of whether it is entitled to summary judgment on the plaintiffs' claims for emotional distress and fear of illness, and for the costs of future diagnostic medical tests.

Summary judgment will be rendered only if it is shown that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). A material fact is one which might affect the outcome of a suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. When the movant has supported its motion with affidavits, the opponent "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "Any reasonable inferences from facts must be resolved in favor of the party against whom the judgment is entered." *Peterson v. Lehigh Valley District Council, United Brotherhood of Carpenters and Joiners*, 676 F.2d 81, 84 (3d Cir.1982) (citation omitted). Westinghouse's motion will be considered in light of these standards.

We will first address the plaintiffs' claims to damages for the costs of future medical monitoring. There is an apparent split of authority among Pennsylvania trial courts regarding such claims. Westinghouse directs the court to *Peterman v. Techalloy Co., Inc.*, 29 Pa. D & C3d 104 (Montg.Co.1982), in which the plaintiffs sought medical surveillance damages, on the ground that they had an increased risk of illness as a result of their use of TCE contaminated water. The plaintiffs' did not allege actual injury or damage, however, and the court held that the complaint failed to state a claim since it is a basic tenet of tort law that a plaintiff cannot recover without proof of actual injury or damage. A claim of "increased risk" was found to be insufficient to overcome that fundamental rule. "The mere breach ... of duty ... causing nominal damages, speculative harm, or the threat of future harm not yet realized does not suffice to create a cause of action for negligence." *Id.* at 107 (quoting *Schenkel v. Monheit*, 266 Pa.Super. 396, 399, 405 A.2d 493, 494 (1979)). Westinghouse argues that although the plaintiffs in the present case have alleged injury, only seventeen have alleged any physical symptoms, and no medical evidence has been proffered to establish a causal link between the exposure to the chemicals and the symptoms in question.

The plaintiffs rely upon *Habitants Against Landfill Toxicants v. City of York*, No. 84–5–3820 (York Co. May 20, 1985), 15 Envtl.L.Rep. 20937, in which the court rejected an argument that acute

physical injury is a predicate to the recovery of medical monitoring expenses. The court merely required proof of exposure to hazardous substances, "the potential for severe and latent injuries, and the need for early detection and treatment." *Id.*, slip op. at ——, 15 Envtl.L.Rep. at ——. Quoting from *Ayers v. Jackson Township (Ayers I)*, 189 N.J.Super. 561, 572–73, 461 A.2d 184, 190 (1983), the court wrote:

Damages may be recovered for the prospective consequences of a tortious injury (cite omitted). It is not the reasonable probability of whether plaintiffs will suffer cancer in the future that should determine whether medical surveillance is necessary. Rather, it is whether it is necessary, based on medical judgment, that a plaintiff who has been exposed to known carcinogens at various levels should undergo annual medical testing in order to properly diagnose the warning signs of the development of the disease. If it is necessary, then the probability of the need for that medical surveillance is cognizable as part of plaintiffs' claim (cite omitted). If plaintiffs are deprived of any necessary diagnostic services in the future because they have no source of funds available to pay for the testing, the consequences may result in serious, if not fatal illness.

To further muddy the waters, both the plaintiffs and Westinghouse cite *Villari v. Terminix International, Inc.*, 663 F.Supp. 727 (E.D.Pa.1987), as supporting their respective positions. The *Villari* court held as follows:

Under Pennsylvania law, a plaintiff seeking costs of medical surveillance as an element of damages must demonstrate that she has suffered some physical injury. *See Greenberg v. McCabe,*

453 F.Supp. 765, 773 (E.D.Pa.1978), *aff'd mem.*, 594 F.2d 854 (3d Cir.1979); *Peterman, supra,* 29 Pa.D. & C.3d at 110. However, we do not understand Pennsylvania law to require that a plaintiff exhibit symptoms of the particular diseases for which medical surveillance is sought. We have found that there is sufficient medical evidence on record to permit a jury to conclude that the Villaris suffered physical injury from Aldrin exposure in the month following the spill. We conclude that the same evidence supports a claim for the costs of future medical surveillance.

*Id.* at 735 (footnotes omitted). In a footnote to this passage, the court wrote:

The Villaris urge this court to predict that the Pennsylvania Supreme Court will follow *Ayers v. Township of Jackson*, 189 N.J.Super. 561, 461 A.2d 184 (1983), *vacated on other grounds*, 202 N.J.Super. 106, 493 A.2d 1314 (1985), and hold that the cost of future medical monitoring is a proper element of damages whenever medical testimony establishes the need for future monitoring. The Villaris have offered no basis for this prediction in decided Pennsylvania cases, and we see none.

■■■ We agree with the *Villari* court that a plaintiff need not exhibit symptoms of a disease before medical surveillance is sought. We disagree, however, that Pennsylvania law requires *physical* injury before a claim for future medical monitoring can be maintained.[1] Instead we will follow the course laid by the courts in *Habitants* and *Ayers I*, for we find that approach to be consistent with Pennsylvania public policy and tort law.[2]

Though taking a different path, we reach the same result as the court in *Villaris*.[3]

---

1. Neither *Greenberg* nor *Peterman* require such a result. *Greenberg* dealt with the issue of whether damages should be awarded for future psychiatric treatment. The question of physical injury never arose. The court held simply that the plaintiff was not entitled to such damages because she did not prove she was likely to undergo treatment in the future. The *Peterman* court dismissed the plaintiff's complaint for the failure to allege *actual* injury. We do not construe "actual" to mean "physical."

2. Unlike the *Villaris* court, we do not read *Ayers I* as dispensing with the requirement of injury. As quoted above, the *Ayers I* court held that "[d]amages may be recovered for the prospective consequences of a tortious injury." *Ayers I*, 189 N.J.Super. at 572, 461 A.2d at 190.

3. Were we to follow *Villaris* and find that a physical injury is a prerequisite to a claim for future medical monitoring, the result in this case would be the same. There is sufficient

Under *Habitants*, in order to recover medical surveillance costs, the plaintiffs must prove: (1) exposure to hazardous substances; (2) the potential for injury; and (3) the need for early detection and treatment. There is sufficient evidence before the court to create a genuine issue of fact as to the first of these requirements. The jury has already determined that the plaintiffs' wells have been contaminated with hazardous substances and from that it would be reasonable to infer exposure to those chemicals. As to the third requirement, there is not a serious question of the value of early detection and treatment of cancer. The plaintiffs' medical expert's report is clear on that issue and is not contradicted by Westinghouse's experts. The second requirement presents a more difficult question. Westinghouse contends that, as a matter of law, there is no potential for injury because the plaintiffs' experts are unable to quantify the risks to the plaintiffs.

That was the position taken by the court in *Ayers v. Jackson Township (Ayers II)*, 202 N.J.Super. 106, 122, 493 A.2d 1314, 1323 (App.Div.1985) (reversing, in part, *Ayers I*). The court limited the breadth of *Ayers I* by requiring a quantification of the risk of disease before imposing liability for medical surveillance costs. The court held as follows:

> Faced with the admitted inability of the expert witness to quantify the increased risk, we cannot rule out the probability that such increase is so microscopically small as to be meaningless. Without some quantifying guidance it becomes impossible to say that defendant has so significantly increased the "reasonable probability," *Coll v. Sherry*, 29 N.J. 166, 175, 148 A.2d 481 (1959), that any of the plaintiffs will develop cancer so as to justify imposing upon defendant the financial burden of lifetime medical surveillance for early clinical signs of cancer.

Though the logic of the *Ayers II* court has some facial appeal, the result is unduly harsh and does not comport with contemporary medical practice. Partly for those reasons, the denial of surveillance costs in *Ayers II* was reversed. *Ayers v. Jackson Township (Ayers III)*, 106 N.J. 557, 525 A.2d 287 (1987). The New Jersey Supreme Court, wrote:

> The Appellate Division's rejection of the medical surveillance claim is rooted in the premise that even if medical experts testify convincingly that medical surveillance is necessary, the claim for compensation for these costs must fall, as a matter of law, if the risk of injury is not quantified, or, if quantified, is not reasonably probable. 202 N.J.Super. at 122–23, 493 A.2d 1314. This analysis assumes that the reasonableness of medical intervention, and, therefore, its compensability, depends solely on the sufficiency of proof that the occurrence of the disease is probable. We think this formulation unduly impedes the ability of courts to recognize that medical science may necessarily and properly intervene where there is a significant but unquantified risk of serious disease.

*Id.* at 599–600, 525 A.2d at 309. Citing numerous cases that allowed the recovery of medical surveillance costs, the court held:

> [T]he cost of medical surveillance is a compensable item of damages where the proofs demonstrate, through reliable expert testimony predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, that such surveillance to monitor the effect of exposure to toxic chemicals is reasonable and necessary. In our view, this holding is thoroughly consistent with our rejection of plaintiffs' claim for damages based on their enhanced risk of injury. That claim seeks damages for the impairment of plaintiffs' health, without proof of its likelihood, extent, or monetary value. In contrast,

___

evidence in the record to create a genuine issue of fact as to whether the plaintiffs suffered

physical injuries from their exposure to the hazardous chemicals found in their wells.

the medical surveillance claim seeks reimbursement for the specific dollar costs of periodic examinations that are medically necessary notwithstanding the fact that the extent of plaintiffs' impaired health is unquantified.

In the present case, the plaintiffs' experts, as were the experts in *Ayers I*, are unable to quantify the plaintiffs' chances of contracting an exposure related disease. Their reports are based not on physical examinations of the plaintiffs, but on laboratory and clinical studies, as well as on various other documents and reports. The experts have not provided, and in fact state they cannot provide, a scientifically sound conclusion as to the precise degree of risk faced by the plaintiffs. For example, on page one of his report, Cipriano Cueto, Ph.D., writes that "it would be fruitless to attempt to 'quantify' the risk." On page five of her report, Shirley A. Conibear, M.D., writes as follows (emphasis added):

The probability of the development of disease relates to the intrinsic toxicity of the agent, the combination of toxic agents which may effect a single target organ, the dose of the agents, and the sensitivity of the organs to the agents. These are all factors in estimating whether serious and progressive disease is likely to result. In regard to cancer, while there is a significant increasing risk as the result of absorbing increasing amounts of toxic cancer-producing agents, *the exact degree of risk, or the certainty that any one individual will develop cancer at a particular point in time is not currently possible to ascertain.* However, cancer is a disease for which no amount of exposure to carcinogens can be assumed safe or risk free. In other words, there is no quantity of a carcinogen that a person can be exposed to without incurring some increased risk. Given that these persons were exposed to multiple chemicals which can cause cancer and other diseases, a medical surveillance program is essential.

Some people are more likely than others to develop disease after the same exposure or dose. This phenomena is well recognized from clinical experience with pharmacologic drugs and from animal experiments where so-called dose-response curves are drawn to show the degree of variability of response in a group of test animals. Human populations show even wider variability in response to toxic agents in large part because of their heterogeneous genetic make up. Currently, it is difficult to predict which individuals are likely to be most sensitive and therefore at highest risk. Therefore, it is prudent to monitor everyone who is exposed as if they constitute the highest risk.

Westinghouse argues that such speculation falls short of the evidence required to create an issue for trial. Even in *Habitants*, the court wrote that "[o]f course, plaintiffs still bear the burden at trial to prove [their] allegations with sufficient testimony. They must show the potential for severe and latent injuries...." *Habitants*, 15 Envtl.L.Rep. at ——.

Here the plaintiffs have proffered sufficient evidence to defeat Westinghouse's summary judgment motion. In his comprehensive report, the plaintiffs' toxicologist explains his assessment of the various chemicals discovered in the plaintiffs' wells, the routes of exposure to those chemicals, and the toxicologic, mutagenic and carcinogenic effects of those chemicals on humans and animals. Dr. Conibear, after explaining the scientific and medical bases for her opinion, concludes, at page 7:

It is clinically prudent and advisable to develop a specially tailored medical surveillance program for persons with the above described exposure. They have documented and reasonably presumed exposure to a variety of chlorinated hydrocarbons including toluene and xylene. These are known to be systemic poisons which can cause injury to multiple organ systems. For all these reasons, this group of persons exposed to chlorinated hydrocarbons constitutes a "high-risk" group. It is well accepted in medical practice that persons at higher than background or average risk of cancer and other diseases should receive more

intensive medical monitoring than the general population.

■ Though they may not convince a jury, the plaintiffs, through their experts' reports, have created an issue of fact as to the probability of contracting a serious illness as a result of exposure to the hazardous substances in their wells. It would be reasonable for a jury to conclude that the plaintiffs have a significantly but unquantifiably enhanced risk of serious disease, and that such enhanced risk of disease justifies periodic medical examinations. For that reason, Westinghouse's motion for summary judgment on the plaintiffs' claims for future medical monitoring will be denied.

We now address the plaintiffs' claims for emotional distress. The parties agree on the applicable law. Basically, damages for emotional distress are recoverable when the distress is the result of: (1) physical injury; (2) physical impact; (3) location within the zone of danger; or (4) witnessing a traumatizing event involving a close relative. *See generally, Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979) (mother witnessing death of daughter); *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970) (zone of danger); *Bosley v. Andrews,* 393 Pa. 161, 142 A.2d 263 (1958) (physical injury or physical impact). The dispute in this case is whether the plaintiffs fall within either of the first two categories.

■ The plaintiffs cite *Conley v. H.M.W. Enterprises,* No. 81–S–4707 slip op. at 4 (York Co. Mar. 12, 1985), for the proposition that "[t]he ingestion of contaminated water into the human body could, upon proper proof, be a sufficient physical impact to permit recovery of emotional distress." In reaching that conclusion, the court followed *Hughes v. Johns-Manville Corp.,* 7 Phila. C. Rptr. 620 (1982), in which the court wrote that "[u]nder the impact rule, *medically demonstrable inhalation and retention* of asbestos particles might be of a sufficient physical impact to permit recovery in this Commonwealth for the attendant emotional distress." *Id.* at 637. Similarly, in *Plummer v. United States,* 580 F.2d 72 (3d Cir.1978), the court found that the impact of tubercle bacilli which infected the bodies of the plaintiffs was sufficient to satisfy the rule. The court wrote that "the effects of a concededly minute tubercle bacillus are potentially no less lethal than, for example, the impact of an automobile." *Id.* at 76.

Westinghouse asserts that the instant case is distinguishable from *Conley, Hughes* and *Plummer.* Westinghouse argues that the plaintiffs have not presented proper proof of impact since they have not presented any medical evidence of the retention of chemicals in their bodies or the impingement of chemical particles on any internal organ. Those arguments are not well taken. The evidence supporting the plaintiffs' claims for medical surveillance costs supports their claims for emotional distress. It reasonably can be inferred, from the fact that the plaintiffs' wells are contaminated, that the plaintiffs have inhaled, ingested and absorbed the hazardous materials found in the wells. The plaintiffs' experts opine that although the effects of the exposures may be undetectable for long periods of time, the plaintiffs have suffered a present physical effect as a result. Furthermore, there is evidence that certain plaintiffs have demonstrated acute physical symptoms of exposure to the chemicals. Thus we find questions of fact to be resolved by the jury and Westinghouse's motion for summary judgment on the plaintiffs' emotional distress claims will be denied.