**Barry FRIEDMAN, et al.**

v.

**F.E. MYERS CO.**

v.

**GENERAL ELECTRIC COMPANY and Monsanto Company.**

Civ. A. No. 88–3033.

United States District Court,
E.D. Pennsylvania.

Jan. 11, 1989.

See also, —— F.Supp. ——.

Arthur W. Lefco, Alan C. Milstein, Mesirov, Gelman, Jaffee, Cramer & Jamieson, Philadelphia, Pa., for plaintiffs.

Faith R. Greenfield, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for F.E. Myers Co.

Richard E. Guster, Timothy S. Guster, Roetzel & Andress, Akron, Ohio, Pro hac vice.

James D. Shomper, Michael H. Malin, White & Williams, Philadelphia, Pa., for Monsanto Co.

Harry A. Short Jr., Philadelphia, Pa., for General Elec. Co.

## MEMORANDUM

NEWCOMER, District Judge.

Before the court are the following motions: motion for summary judgment of F.E. Myers Co. (Myers); motion of Monsanto Company for summary judgment on causation or, in the alternative, motion in limine to preclude expert testimony; and motion of General Electric Company for summary judgment on causation or, in the alternative, motion in limine to preclude expert testimony; and General Electric's motion in limine to preclude testimony by plaintiffs' experts Rock, Furbish, and Fitzgerald.

### I. *Factual Background*

This is a personal injury action arising out of plaintiffs' alleged exposure to polychlorinated biphenyls (PCBs). As alleged by plaintiffs, a submersible water pump manufactured by defendant F.E. Myers Co. was installed in a water well at their home in 1974. The pump contained a capacitor manufactured by defendant General Electric. The capacitor contained PCBs manufactured or sold by defendant Monsanto. During September 1986, plaintiffs ingested and showered in water from the well that tasted or felt "oily." Plaintiff Carol Pearl testified at her deposition that the water tasted oily, and that sometime later in the day after taking a shower in the oily water she felt "disoriented and dizzy." Myers Exh. B at 53, 57. Plaintiff Barry Friedman (Friedman) took a shower and afterwards noticed an oily feeling in his hair and on his skin. Myers Exh. A at 61. Plaintiff Edward Pearl also took a shower and noticed

that the water was oily. Myers Exh. C at 19. Friedman and Carol Pearl later underwent medical tests which indicate that their bodies contain PCBs in concentrations exceeding the "normal" amounts. Plaintiffs' Exh. 7.

Plaintiffs' amended complaint includes five counts, as follows: Count I is a negligence claim; Count II is a strict liability claim; Count III is a breach of warranty claim; Count IV is a concert of action claim asserting that Myers acted with other pump manufacturers and a trade association to disseminate false and misleading information about the dangers of PCBs in well pumps; and Count V alleges a civil conspiracy by Myers and the trade association to disseminate false and misleading information about the dangers of PCBs in well pumps.

With regard to the injuries sustained, plaintiffs claim that:

> [a]s a proximate result of being exposed to these PCBs plaintiffs have sustained damage, suffering and losses both to their persons and to their property.
>
> As a further and direct proximate result of defendant's conduct, plaintiffs, particularly plaintiff Carol Pearl, have undergone pain, mental anguish and emotional distress and will continue to do so, have experienced a severe anxiety, hysteria and fear, any or all of which has or will develop into a psychiatric condition due, inter alia, to the acquired knowledge that they were unknowingly exposed to PCBs and can contract, as a result therefrom, cancer.

Amended Complaint, ¶¶ 11–12. In a nutshell, then, plaintiffs claim to have suffered injury in the form of pain and suffering, emotional distress, and fear of developing cancer as a result of their alleged exposure to PCBs.[1]

Defendants have moved for summary judgment on several grounds. First, they

---

[1]. Plaintiffs have not indicated that they seek to recover for the costs of future medical surveillance or monitoring as a result of their alleged exposure. *Cf. Merry v. Westinghouse Electric Corp.* 684 F.Supp. 847 (M.D.Pa.1988) (discussing cases) (property owners whose wells had been contaminated by toxic substances sought to recover costs of future medical surveillance); *Villari v. Terminix International, Inc.*, 663 F.Supp. 727 (E.D.Pa.1987) (Pollak, J.) (plaintiff whose home was treated with a hazardous termiticide sought to recover for costs of future medical monitoring).

claim that plaintiffs have no present physical injury and are thus precluded from recovery under Pennsylvania law. Second, they claim that plaintiffs are unable to show a causal relationship between the conduct of the defendants and plaintiffs alleged injuries. Third, they claim that the opinion of plaintiffs' expert (regarding plaintiffs' increased risk of cancer and the reasonableness of their fear of developing cancer as a result of the alleged exposure to PCBs) is insufficient under the Federal Rules of Evidence as a matter of law. Fourth, they argue that plaintiffs' breach of warranty claim is barred by the applicable statute of limitations. Fifth, they claim that plaintiffs lack sufficient evidence to support their concert of action and civil conspiracy claims against defendant Myers.

## II. *Summary Judgment Standard*

A trial court may enter summary judgment if, after a review of all evidentiary material in the record, there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir.1988); *Bank of America Natl. Trust and Sav. Ass'n v. Hotel Rittenhouse Associates*, 595 F.Supp. 800 (E.D.Pa.1984). The evidence presented must be viewed in the light most favorable to the non-moving party. *White*, 862 F.2d at 59. Where no reasonable resolution of the conflicting evidence and inferences therefrom could result in a judgment for the non-moving party, the moving party is entitled to summary judgment. *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 883 (3rd Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981).

The moving party has the initial burden of identifying evidence which it believes shows an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir.1988). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions or answers to interrogatories showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, when the nonmoving party bears the burden of proof, it must " 'make a showing sufficient to establish [every] element essential to that party's case.' " *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir.1987) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White*, 862 F.2d at 59 (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

## III. *Discussion*

### A. Physical Injury Requirement

■ There is generally no cause of action in tort until a plaintiff has suffered identifiable, compensable injury. *Schweitzer v. Consolidated Rail Corp.* 758 F.2d 936, 942 (3d Cir.1985). As explained in a leading treatise:

> Actual loss or damage resulting to the interests of another [is a necessary element of a negligence cause of action].... The threat of future harm, not yet realized, is not enough. Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered.

W. Prosser and P. Keeton, Prosser and Keeton on Torts (5th ed. 1984) at 165 (footnotes omitted).

In *Schweitzer v. Consolidated Rail Corp.* 758 F.2d 936 (3d Cir.1985), former railroad employees sought to recover for asbestos-related injuries resulting from

their employment. After citing the above treatise, the court concluded that mere exposure to asbestos did not give rise to a cause of action under generally applicable principles of tort law. Allowing a cause of action after mere exposure would mean that proof of damages would be highly speculative, the court stated; this, in turn, would likely result in "windfalls for those who never take ill and insufficient compensation for those who do." *Id.* at 942. "Requiring manifest injury as a necessary element of an asbestosrelated tort action avoids these problems and best serves the underlying purpose of tort law: the compensation of victims who have suffered." *Id. See also Deleski v. Raymark Indus., Inc.*, 819 F.2d 377 (3d Cir.1987) (claim for negligent infliction of emotional distress not legally cognizable until plaintiff manifests physical injury caused by exposure to asbestos; similarly, plaintiff's claim that she is likely to contract cancer because of her exposure fails because Pennsylvania law does not permit recovery for the *possibility* of future harm caused by a tortious act); *In re Paoli Railyard PCB Litigation*, 706 F.Supp. 358 (E.D.Pa. 1988) (R.M. Kelly, J.) (the "possibility of future harm, fear of future harm, emotional distress, or the mere fact that [plaintiffs] have PCBs in their body" is insufficient to state a claim for risk of future harm; plaintiffs must show a present injury or health problem); *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985) (*possibility* of future harm is not admissible in action to recover for increased risk of contracting cancer as a result of exposure to asbestos; plaintiff must present competent, non-speculative evidence from which jury can reasonably determine the degree to which future consequences of a present injury are probable and, accordingly, what the amount of damages should be); *Houston v. Texaco, Inc.*, 371 Pa.Super. 399, 538 A.2d 502 (1988) (landowners whose wells were contaminated by a neighbor's leaking gasoline storage tank could not recover under Pennsylvania law for negligently inflicted mental or emotional distress in the absence of attendant physical injuries); *Beradi v.*

*Johns–Manville Corp.*, 334 Pa.Super. 36, 482 A.2d 1067 (1984) (claim for alleged fear of contracting asbestosis diseases in the future dismissed when plaintiff could identify no physical injury or medically-identifiable effect linked to her exposure to asbestos); *Cathcart v. Keene Indus. Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984) (claim for emotional distress was not legally cognizable unless and until plaintiff manifested physical injury caused by exposure to asbestos; mere ingestion of asbestos fibers does not constitute injury); *cf. Merry v. Westinghouse Electric Corp.* 684 F.Supp. 847 (M.D.Pa.1988) (property owners whose wells had been contaminated by toxic substances may seek costs of future medical surveillance without a showing of existing physical injury; claim for emotional distress permitted when plaintiffs had suffered a present physical effect as a result of the exposure and certain plaintiffs also demonstrated acute physical symptoms of exposure); *Villari v. Terminix International, Inc.*, 663 F.Supp. 727 (E.D. Pa.1987) (physical harm requirement satisfied when homeowner suffered headaches, nausea, dizziness, and general malaise after their home was treated with a hazardous termiticide).

It is with these general principles in mind that I turn to an examination of plaintiffs' claimed injuries. Plaintiff Carol Pearl testified at her deposition that sometime after drinking and showering she felt "disoriented and dizzy." Myers Exh. B at 53, 57. In addition, a medical test performed on Carol Pearl indicates that her body contains PCBs in a concentration in excess of the "normal" amount. Plaintiffs' Exh. 7. Plaintiff Friedman took a shower and afterwards noticed an oily feeling in his hair and on his skin. Myers Exh. A at 61. A medical test performed on Friedman indicates that his body contains PCBs in a concentration in excess of the "normal" amount. Plaintiffs' Exh. 7. Plaintiff Edward Pearl also took a shower and noticed that the water was oily. Myers Exh. C at 19. With regard to Edward Pearl, plaintiffs have withdrawn any claim that he has an increased risk of cancer. Plaintiffs' Memorandum at 6.

■ Under the principles outlined above, the court finds that plaintiff Carol Pearl has presented sufficient evidence from which a jury might reasonably conclude that she suffered physical harm. In this regard, the court notes that she claims to have suffered physical symptoms not unlike those suffered by the plaintiffs in *Villari.* With regard to plaintiffs Barry Friedman and Edward Pearl, the court finds that they have failed to present sufficient evidence from which a jury might reasonably conclude that they suffered physical harm. In the absence of any evidence beyond mere exposure, the court finds that Friedman and Edward Pearl's claims for emotional distress cannot stand and summary judgment against plaintiffs Friedman and Edward Pearl will be granted on all counts. *See Deleski v. Raymark Indus., Inc.,* 819 F.2d 377 (3d Cir.1987); *Schweitzer v. Consolidated Rail Corp.* 758 F.2d 936 (3d Cir.1985); *In re Paoli Railyard PCB Litigation,* 706 F.Supp. 358 (E.D.Pa. 1988) (R.M. Kelly, J.); *Martin v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985); *Houston v. Texaco, Inc.,* 371 Pa.Super. 399, 538 A.2d 502 (1988); *Beradi v. Johns–Manville Corp.,* 334 Pa. Super. 36, 482 A.2d 1067 (1984); *Cathcart v. Keene Indus. Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984).

### B. Causation and Sufficiency of Expert Opinion

Defendants contend that plaintiffs have failed to establish a causal relationship between the conduct of the defendants and plaintiffs' alleged injuries. They also claim that the opinion of plaintiffs' expert regarding plaintiffs' increased risk of cancer and the reasonableness of their fear of developing cancer as a result of the alleged exposure to PCBs is insufficient under the Federal Rules of Evidence as a matter of law. Plaintiffs, of course, strongly disagree with both of these contentions.

In *In Re: Japanese Electronics Products Antitrust Litigation,* 723 F.2d 238, 275–79 (3d Cir.1983), *rev'd on other grounds,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Third Circuit adopted a liberal approach to determining what evidence is reasonably relied upon by experts in the field. In that case, the Third Circuit concluded that once the trial court finds that the data relied on is such as experts in the field reasonably rely upon, the trial court should not separately determine the trustworthiness of the data.

■ After a review of the voluminous materials submitted by the parties with respect to causation and sufficiency of expert opinions, the court finds that neither summary judgment nor exclusion of expert testimony is appropriate on these issues. Viewing the evidence in the light most favorable to the non-moving party and resolving any conflicts in her favor, the court finds that genuine issues of material fact exist with respect to causation. Similarly, the court is unable to conclude that the testimony of plaintiffs' expert witness, Dr. John DiGregorio, will be inadmissible as based on materials not reasonably relied upon by experts in the field. Thus, it will be for the jury to hear plaintiffs' expert testimony on causation and give it whatever weight is appropriate. *See also Ramirez v. Richardson–Merrell, Inc.,* No. 85–1504 (E.D.Pa. Sept. 4, 1986) [1986 WL 9724] (Huyett, J.) (in a personal injury action resulting from mother's ingestion of Benedectin, genuine issues of fact existed with respect to causation, and it was for the jury to decide whether expert opinion based on animal studies, structural analysis, and in vitro studies were valid); *Lanzilotti v. Merrell Dow Pharmaceuticals, Inc.,* No. 82–0183 (E.D.Pa. July 10, 1986) [1986 WL 7832] (Weiner, J.) (same); *but see In re Paoli Railyard PCB Litigation,* 706 F.Supp. 358 (E.D.Pa. 1988) (R.M. Kelly, J.) (excluding certain expert opinion testimony in an action brought by persons allegedly exposed to PCBs).

The court will, however, grant the motions of defendants to exclude any testimony of Dr. DiGregorio relating to the nature and extent of Carol Pearl's fear of cancer. *See* Deposition of Dr. John DiGregorio, Nov. 9, 1988, at 143.

## C. Breach of Warranty Claim

■ Defendant Myers asserts that Count III of the complaint is barred by the applicable statute of limitations. Myers claims that any claim for breach of warranty must have been raised by plaintiffs within four years of the sale of the pump, i.e., no later than 1978. 13 Pa. Cons.Stat.Ann. § 2725; *see also Patton v. Mack Trucks, Inc.*, 360 Pa.Super. 1, 519 A.2d 959 (1986). Plaintiffs fail to rebut this argument, and in fact, their memorandum makes no mention of it. Because plaintiffs have failed to satisfy their burden under *Celotex* on this count, summary judgment will be granted in favor of the defendant on the breach of warranty claim.

## D. Concert of Action Claim

In count IV of the complaint, plaintiffs claim that Myers and the Water Systems Council (WSC), a trade association, acted in concert to disseminate "false and misleading information about the dangers of PCBs in well pumps and the risks of well-water contamination by PCBs, resulting in plaintiffs and the general public not being adequately warned about such dangers and risks." Amended Complaint, ¶ 29.

Under Pennsylvania law, a cause of action for concerted activity is based on Section 876 of the Restatement (Second) of Torts, which provides:

> For harm resulting to a third person from the conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with another or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so as to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Burnside v. Abbott Laboratories*, 351 Pa. Super. 264, 280, 505 A.2d 973, 982 (1985). Read in the context of Section 876, plaintiffs are attempting to subject Myers to liability by showing that Myers: (1) committed a tortious act in concert with or pursuant to a common design with WSC, or (2) knew that WSC's conduct constituted a breach of duty to plaintiffs and gave substantial assistance or encouragement to WSC so as to conduct itself, or (3) gave substantial assistance to WSC in accomplishing a tortious result and its own conduct, separately considered, constituted a breach of duty to Plaintiffs.

Implicit in the proof of this cause of action, then, is the commission of a tortious act by Myers *and* WSC. The tortious act alleged is the dissemination of false and misleading information regarding PCBs in well pumps and failing to warn the public of the attendant dangers and risks. For WSC's actions to be tortious, plaintiffs must prove that WSC owed plaintiffs a duty of care which they then breached.

WSC is a trade association of water pump manufacturers. Plaintiffs' Exh. 34. The services performed by WSC for its members include the following: collection and dissemination of industry operating statistics; education of members; marketing promotion; development and distribution of industry engineering standards; and lobbying on behalf of its members. Plaintiffs' Exh. 38.

■ As a threshold issue, the court must consider whether WSC owed a duty to plaintiffs. In *Arnstein v. Manufacturing Chemists Ass'n, Inc.*, 414 F.Supp. 12 (E.D. Pa.1976) (Fullam, J.), plaintiff brought an action to recover for injuries sustained as a result of long-term exposure to vinyl chloride during his employment. One of the defendants, a nonprofit trade association, moved for dismissal of the complaint on the basis that it owed no legal duty to the plaintiff. In denying the motion, the court concluded that circumstances might exist under which the trade association owed a duty to the plaintiff pursuant to the good samaritan doctrine of Section 324A of the Restatement (Second) of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to an-

other which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm from his failure to exercise reasonable care to [perform] his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The court noted that resolution of the issue on a motion to dismiss was premature and that the issue could be raised again by the trade association in a motion for summary judgment.

A similar case is *Klein v. Council of Chemical Associations*, 587 F.Supp. 213 (E.D.Pa.1984) (Shapiro, J.). In *Klein*, a printing industry worker brought suit against manufacturers of printing chemicals, trade associations, and a research institute, alleging that he had contracted cancer as a result of long-term exposure to various chemical products used in the industry. In granting motions to dismiss the complaint, the court found no support for plaintiff's contention that a research institute had a duty to warn consumers under § 402A of the Restatement (Second) of Torts as do manufacturers and sellers of products. *Id.* at 224.

Similarly, the court found that application of the good samaritan doctrine of Section 323 of the Restatement (Second) of Torts was not appropriate, noting that its foundation is the undertaking of a specific task that the defendant is charged with having performed negligently. *Id.* at 224 (quoting *Patentas v. United States*, 687 F.2d 707 (3d Cir.1982)); *see also Evans v. Liberty Mutual Insur. Co.*, 398 F.2d 665 (3d Cir.1968) (under § 323, negligent performance or nonperformance must increase the risk of harm and there must be reliance by the plaintiff upon the defendant's performance). The court noted that unlike the plaintiff in *Arnstein*, Klein failed to identify a specific product which the trade association had tested to which he was exposed. In addition, the plaintiff in *Arnstein* also asserted that the defendant trade association had recommended a safe exposure level which was allegedly unsafe.

Under the facts of the case before me, I find that WSC owed no duty to plaintiffs. As stated above, WSC is a trade association of water pump manufacturers. The services performed by WSC for its members include the following: collection and dissemination of industry operating statistics; education of members; marketing promotion; development and distribution of industry engineering standards; and lobbying on behalf of its members. Although WSC has issued "public information releases," *see* Plaintiffs' Exh. 34, it is under no duty to do so and it certainly owes plaintiffs no legal duty in doing so.

Similarly, application of the good samaritan doctrine of Section 323 of the Restatement (Second) of Torts is not appropriate. *See Patentas v. United States*, 687 F.2d 707 (3d Cir.1982) (foundation of Section 323 is the undertaking of a specific task that the defendant is charged with having performed negligently). Plaintiffs have presented no evidence that WSC undertook a specific task for the benefit of plaintiffs. Even if the court assumes arguendo that WSC undertook to inform the public about the well pump—PCB situation, there is no evidence that plaintiffs relied on WSC's performance and in fact, the evidence is to the contrary. *See* Myers Exh. I (Plaintiffs' Answers to Interrogatories nos. 4, 5, and 6, in which Plaintiffs state that they had not read any allegedly false or misleading information or publication concerning PCBs in well pumps prior to the date of the incident). This precludes any finding of duty under a § 323 theory. *See Evans v. Liberty Mutual Insur. Co.*, 398 F.2d 665 (3d Cir.1968) (under § 323, negligent performance or nonperformance must increase the risk of harm *and* there must be reliance by the plaintiff upon the defendant's performance).

Having failed to show the existence of a legal duty owed them by WSC, plaintiffs cannot prevail on their concert of action

claim. Therefore, the court will grant summary judgment in favor of the defendants as to this count of the complaint.

### E. Civil Conspiracy Claim

■ In count V of the complaint, plaintiffs claim that Myers reached an agreement or tacit understanding with WSC and its members to disseminate "false and misleading information about the dangers of PCBs in well pumps and the risks of well-water contamination by PCBs, resulting in plaintiffs and the general public not being adequately warned about such dangers and risks," and that such acts were done in furtherance of the conspiracy to suppress such information in an unlawful manner. Amended Complaint, ¶¶ 33, 34.

Under Pennsylvania law, a civil conspiracy is proved by showing that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). An essential element in proof of a conspiracy is malice, i.e., an intent to injure. *Id.* (citing cases).

After reviewing the arguments of the parties on this claim, the court finds that sufficient facts exist from which a reasonable jury might find the existence of a civil conspiracy in which Myers participated. Therefore, the court will deny Myers motion for summary judgment as to the conspiracy claim.

### IV. *Motion in Limine to Preclude Testimony by Plaintiffs' Experts Rock, Furbish, and Fitzgerald*

This case was placed in the trial pool on November 25, 1988. This motion was filed by General Electric on January 5, 1989, to preclude the testimony of certain experts retained by plaintiffs. Exhibit D to the motion indicates that General Electric received the expert reports which are now the subject of this motion shortly after October 19, 1988; no explanation is given why General Electric did not file the motion at an earlier date. Under the circumstances, sufficient time does not exist for plaintiffs to respond to the motion and for the

court to then consider the matter. Therefore, the court will deny the motion. General Electric may, of course, raise the issue again at the appropriate time during trial.

An appropriate order follows.

### ORDER

AND NOW, this 10th day of January, 1989, upon consideration of the various motions for summary judgment and the response thereto, it is hereby Ordered as follows:

1. The motion for summary judgment of F.E. Myers Co. is GRANTED IN PART and DENIED IN PART, as follows:

a. Summary judgment is GRANTED in favor of Myers and against plaintiffs Barry Friedman and Edward Pearl as to all counts.

b. Summary judgment is GRANTED in favor of Myers and against all plaintiffs on the breach of warranty claim (Count III).

c. Summary judgment is GRANTED in favor of Myers and against all plaintiffs on the concert of action claim (Count IV).

d. In all other respects, Myers' motion for summary judgment is DENIED.

2. With respect to the motion of Monsanto Company for summary judgment on causation or, in the alternative, motion in limine to preclude expert testimony, to the extent that the motion seeks to exclude testimony of Dr. DiGregorio relating to the nature and extent of Carol Pearl's fear of cancer, the motion is GRANTED; in all other respects, the motion is DENIED.

3. With respect to the motion of General Electric Company for summary judgment on causation or, in the alternative, motion in limine to preclude expert testimony, to the extent that the motion seeks to exclude testimony of Dr. DiGregorio relating to the nature and extent of Carol Pearl's fear of cancer, the motion is GRANTED; in all other respects, the motion is DENIED.

4. The motion of General Electric Motion in Limine to Preclude Testimony by

Plaintiffs' Experts Rock, Furbish, and Fitzgerald is DENIED.

AND IT IS SO ORDERED.