**Kenneth J. BUBASH, and Loretta Bubash, his wife, Plaintiffs,**

v.

**PHILADELPHIA ELECTRIC COMPANY, and Bartlett Nuclear Corporation, Defendants.**

**Civ. A. No. 88–1444.**

United States District Court, M.D. Pennsylvania.

Aug. 17, 1989.

---

Michael S. Bloom, Shrager, McDaid, Loftus, Shepherd & Flum, Philadelphia, Pa., for plaintiffs.

Alfred H. Wilcox, Ellen Kittredge Scott, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Defendants, Philadelphia Electric Company (PECO) and Bartlett Nuclear Corporation (Bartlett), have moved for summary judgment pursuant to Fed.R.Civ.P. 56. The issue presented is whether plaintiffs, husband and wife, can recover damages for emotional distress as a result of the exposure of plaintiff, Kenneth J. Bubash, to radiation at the Peach Bottom nuclear power plant in York County, Pennsylvania. Kenneth Bubash seeks to recover for emotional distress resulting from the exposure and his fear of contracting cancer. Loretta Bubash seeks compensation for her emotional distress arising from her decision to have an abortion out of fear that her fetus, conceived some months after her husband's exposure, had genetic defects as a result of that exposure. This action is controlled by Pennsylvania law. Defendants removed the action from state court, predicating our jurisdiction upon 42 U.S.C. § 2210(n)(2). Defendants' motion argues that Kenneth Bubash's exposure to radiation was trivial and well within the limits of safe exposure set by the Nuclear Regulatory Commission. *See* 10 C.F.R. §§ 10.101 and 20.103. Hence, it cannot constitute the physical injury necessary for either one of the plaintiffs to recover here. We will examine the motion under the well established standard. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### II. *Background.*

We glean the following undisputed facts from the pleadings, and the depositions and affidavits filed in connection with the summary judgment motion. Kenneth Bubash is a weld coordinator employed by a third party to this litigation. On February 10, 1985, he was working at PECO's Peach Bottom Plant where defendant Bartlett was performing some contractual duties which plaintiffs allege involved welding replacement pipe. To inspect a weld for a possible defect Kenneth Bubash put his head and upper torso into a valve at the plant for about a minute. After the inspection, as part of a routine check of his person, he detected radiation on one elbow. The health personnel at the plant were unable to wipe the radiation off the elbow and Bubash was showered and scrubbed.

He was informed that this effort was successful and he returned to work. At the end of his shift, however, he set off alarms in a doorway type radiation detector all employees were required to pass through before leaving the plant. At the time the alarm went off, Bubash was still fifteen to twenty feet away from the detector. Nasal smears were taken and tested for radiation. Bubash was returned to the showers where even more vigorous scrubbing was done and he was monitored for radiation by means of whole body counting, a method of determining radiation levels both inside and outside the body. This test was repeated several times in the immediately following days. Bioassay measurements were also taken of the nasal smears as well as of urine and fecal samples supplied by Bubash. The plaintiff had been contaminated with cobalt-60.

The defendants have submitted the report of an expert, Carol D. Berger, who examined the readings which were taken. She has stated:

His external (whole body) radiation dose during the month of February, 1985, was calculated by the Licensee to be 193 millirem.... When this is added to the dose contribution from intake of 60Co, the a (sic) total effective dose equivalent attributed to this incident is approximately 198 millirem. The dose to his lungs from internal and external exposure as a result of this incident was approximately 24 millirem, and the dose to his gonads, which were shielded somewhat from the primary source of external radiation, was less than 50 millirem. These values are well within the regulatory dose standards for occupational exposure of radiation workers.

Because Mr. Bubash chose a career as a radiation worker for the nuclear power industry prior to the 1985 incident, he had already received an average of 2,400 millirem occupational dose per year every year from January of 1982 to January of 1985. In addition, he received approximately 300 millirem per year every year as a result of normal background radiation exposure. Compared to his previous occupational exposure history, and to the doses he receives every year from natural background radiation, the total radiation dose received by Mr. Bubash as a result of the 1985 incident is trivial, and that (sic) there is no significant increase in his risk of long-term radiation-related health effect.

(defendants' motion for summary judgment, Exhibit E, Report of Carol Berger, pps. 21–22).

Another defense expert, Paul B. Selby, addressed the reasonableness of the husband plaintiff's fear of contracting cancer and of the plaintiffs' concern about having a genetically damaged infant. After discussing statistical studies, Dr. Selby concluded as follows:

I shall first apply the genetic risk estimates in the BEIR III report to Mr. Bubash's situation, again assuming a gonadal exposure of 50 mrem. If both parents were exposed to 1000 mrem, the probability of having a child with a serious genetic handicap would range from 5–75 per million. For the Bubashes, I calculate that the chance that Mr. Bubash's gonadal exposure, from the incident in question, would cause a serious handicap in any one child would be at most 2.5 per million. This is equivalent to a risk of 0.00025%. The normal chance that any one child of the Bubashes would have a serious genetic handicap would be at least 10.7% even if neither parent had been irradiated.

(defendants' motion, Exhibit F, ¶ 14).

Using a different statistical report, the chances of a genetically defective child was one in 2.3 million. (*Id.* ¶ 15). Dr. Selby's affidavit further stated:

According to the international and national consensus of expert scientific studies and opinion, no transmissible genetic effects have ever been observed in human populations exposed to radiation, and any risk of such effects from an exposure as small as that received by Mr. Bubash would be both hypothetical and infinitesimally small. In fact, the main scientists carrying out the studies on humans view the risk estimates based

on the mouse as overestimates of the human hazard. Even the risk estimates for Mr. Bubash that are based on results in experimental mammals are extremely small. This is especially true in view of some of the risks that we normally take for granted, such as driving to work or having a baby.

It is my opinion that, to a reasonable degree of medical certainty, the exposure to radiation received by Mr. Bubash on February 10, 1985, which is described in the report of Carol Berger, would not give rise to any genetic effects. Furthermore, that exposure should not, in any way, influence Mr. and Mrs. Bubash's decision about whether to have children. I cannot guarantee that they will have a normal child. No one could guarantee that.

*Id.*, ¶¶ 16, 17.

In connection with the husband plaintiff's fear of contracting cancer, Dr. Selby estimated the increased risk at .02% to .06%. *Id.* ¶ 18.

Plaintiff do not dispute defendants' figures. They provide no experts of their own. Their case is predicated solely upon the undisputed fact that the husband plaintiff's body was bombarded by radiation, however small the dose. In their view, this is a physical injury entitling them to compensation for emotional distress under Pennsylvania law.[1]

### III. Discussion.

■ In regard to Kenneth Bubash's claims for emotional distress and fear of contracting cancer, the weight of authority is with defendants. Mere exposure is not the equivalent of physical injury. As stated by the court in a toxic chemical exposure case:

In *Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936 (3d Cir.1985), former railroad employees sought to recover for asbestos-related injuries resulting from their employment. ... the court concluded that mere exposure to asbestos did not give rise to a cause of action under generally applicable principles of tort law. Allowing a cause of action after mere exposure would mean that proof of damages would be highly speculative, the court stated; this, in turn, would likely result in "windfalls for those who never take ill and insufficient compensation for those who do." *Id.* at 942. "Requiring manifest injury as a necessary element of an asbestos-related tort action avoids these problems and best serves the underlying purpose of tort law: the compensation of victims who have suffered." *Id.*

*Friedman v. F.E. Meyers Co.*, 706 F.Supp. 376, 379–80 (E.D.Pa.1989) (collecting and summarizing cases).

In the instant case, plaintiffs have shown only exposure to radiation, quickly dissipating in the days following the contamination. This is not a physical injury actionable under Pennsylvania law. *Houston v. Texaco, Inc.*, 371 Pa.Super. 399, 538 A.2d 502, *allocatur denied*, 520 Pa. 575, 549 A.2d 136 (1988), supports this conclusion. In *Houston*, plaintiffs sued for emotional distress arising from consumption of contaminated well water. Noting that "[t]here was no evidence, medical or lay, that any members of the household had become ill because of the consumption of contaminated water," *id.* 371 Pa.Super. at 403, 538 A.2d at 504 (brackets added), the superior court stated: "We are charged ... to apply the law as it has been pronounced by the Supreme Court. That law, as we understand it, is that there can be no recovery for negligently inflicted mental or emotional distress in the absence of attendant physical injury to the person of the claimant." *Id.* at 405, 538 A.2d at 505.[2] Remarking in dictum upon the circumstances

---

**1.** Plaintiffs made a claim for the expense of future medical monitoring of the husband plaintiff's condition. They have provided no proof, however, of this claim and have not briefed it. We therefore find in favor of defendants on this issue.

**2.** Plaintiffs' complaint alleges reckless, outrageous and wanton conduct but they have not presented evidence to support those allegations and their brief concentrates on negligent infliction of emotional distress.

of the instant case, the court also stated that:

> We recognize that the creation of an ... exception [permitting recovery] may have far reaching consequences, particularly in cases of nuclear accident or contamination of property by invading carcinogens, which give rise to claims for mental or emotional distress without accompanying physical injury. If such an exception is to be created, therefore, it must be done either by the legislature or the Supreme Court. It should not be created by an intermediate appellate court.

*Id.* at 405 n. 3, 538 A.2d at 505 n. 3 (brackets added).

Not all courts have reached this conclusion. *See Doe v. Equifax Services, Inc.,* 1989 WL 57348, 1989 Lexis 5997 (E.D.Pa. 1989) (disagreeing with *Houston's* conclusion that the Pennsylvania Supreme Court would require physical injury before permitting recovery for emotional distress and denying motion to dismiss the claim). But we think it is the correct ruling here. *See Mateer v. U.S. Aluminum Co.,* 1989 WL 60442, 1989 Lexis 6323 (E.D.Pa.1989) (no recovery for emotional distress arising from drinking water contamination when "the record is devoid of evidence that the Mateers have suffered, or have a significant risk of suffering, physical harm as a result of the alleged contamination.").

Defendants devote a footnote in their brief to arguing that our decision in *Merry v. Westinghouse Electric Corp.,* 684 F.Supp. 847 (M.D.Pa.1988) was erroneous. (See defendants' memorandum in support of their motion for summary judgment, p. 16 n. 23). *Merry* could be construed as being inconsistent with the conclusion we reach in the instant case. In *Merry,* we held that certain plaintiffs were entitled to a jury determination of their emotional distress claims when their experts "opine[d] that although the effects of the exposures may be undetectable for long periods of time, the plaintiffs have suffered a present physical effect as a result." *Id.* at 852 (brackets added). We made no reference to the necessity of a physical injury, focus-

ing instead on the "physical impact" sometimes used by the courts in discussing emotional distress claims. *See, e.g., Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988 (1987). We prefaced our discussion by a reference to *Hughes v. Johns–Manville Corp.,* 7 Phila.Co.Rptr. 620 (1982), in which the court had concluded that a physical impact could be found by inhalation and retention of asbestos particles.

There is no need to review the *Merry* decision here since plaintiffs in the instant case could not meet the *Merry* standard. Kenneth Bubash's exposure to radiation was within regulatory limits, caused him no physical injury, and the effect upon his body was temporary. Conversely, in *Merry* a group of plaintiffs presented expert testimony that some of them were suffering from a "present physical effect." Moreover, there was evidence that other plaintiffs had "demonstrated acute physical symptoms." *Merry,* 684 F.Supp. at 852. Under those circumstances, we rejected defendant's request that we indiscriminately foreclose as a matter of law a claim by all the plaintiffs for emotional distress arising from exposure to contaminated water. We turn now to Loretta Bubash's claim.

█ Despite their knowledge of Kenneth Bubash's exposure, plaintiffs decided to have a third child and sometime in September of 1985, some eight months after the accident, stopped using birth control. Thereafter, Mrs. Bubash visited her obstetrician on November 25, 1985, who confirmed she was pregnant. He estimated the pregnancy at six weeks. At that time Mrs. Bubash sought his advice concerning the effect of her husband's exposure upon her child but gave him no definite figures on the amount. He consulted a radiologist. In her words, he could not guarantee a normal baby. Without consultation with other experts or physicians, Mrs. Bubash then had the abortion. (See Loretta Bubash deposition, pps. 18–32).

Plaintiffs argue that Loretta Bubash's physical injury occurred when she was impregnated by her husband's irradiated sperm some seven to eight months after his

exposure. Plaintiffs contend she is entitled to have a jury decide if her apprehension, and subsequent decision to abort, were reasonable responses to the situation and if so, compensation for her emotional distress. Plaintiffs point out that even the defendants' expert has calculated that there was an increased risk, no matter how slight, of a genetic deformity resulting from Kenneth Bubash's exposure. They cite *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978), for the proposition that plaintiff is therefore entitled to a jury determination of the damages resulting from that increased risk. *Hamil* is inapposite to the case at bar. It applies to situations in which "the defendant's act or omission failed in a duty to protect against harm from another source." 481 Pa. at 269, 392 A.2d at 1286. In the instant case, plaintiffs charge defendants with actually having caused the harm.

We think that *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984) (en banc) can guide our resolution of Loretta Bubash's claim. In *Cathcart*, the wife of an asbestos worker sued to recover for negligent infliction of emotional distress arising from her own exposure to asbestos particles in the clothing her husband brought home for her to clean. Rejecting the claim, the Pennsylvania Superior Court stated:

> In the case before us, Mrs. Cathcart has demonstrated no physical manifestation of disease whatsoever. Her allegation is basically only that she "undoubtedly ingested" asbestos fibers in laundering her husband's clothes over the years. We agree with the lower court that until Thelma Cathcart is able to allege some physical injury or some medically-identifiable effect linked to her exposure to asbestos particles, her claim for negligent infliction of emotional distress is not legally cognizable.

*Id.* at 152, 471 A.2d at 508.

Similarly, in the instant case, Mrs. Bubash has been unable to show any physical injury or medically identifiable effect linked to her exposure to radiation from her husband. The uncontradicted affidavit of defendants' expert placed her risk of a genetically deformed child at .000025 from her husband's exposure. We view this as establishing that there was no medically identifiable effect upon her for which she can recover. We would also add that Mrs. Bubash decided to have the abortion the day after she consulted with her obstetrician who had, in turn, consulted a radiologist. She apparently explored no other possibilities to ascertain whether, in fact, her fetus had been affected by radiation, such as genetic testing of the fetus or surrounding amniotic fluid. While we understand the emotional considerations that might have compelled her decision, we cannot say on this record that her claim is redressable under current Pennsylvania law.